TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00328-CV






Robertson County, Texas, Appellant



v.



Cynthia Wymola, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT


NO. 93-04630, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING






 Appellee Cynthia Wymola sued appellant Robertson County, Texas, under the
Texas Whistleblower Act, alleging that she was fired for reporting violations of law by Robertson
County Sheriff Lee Scott Hurley. See Act of May 30, 1983, 68th Leg., R.S., ch. 832, 1983 Tex.
Gen. Laws 4751 (Tex. Rev. Civ. Stat. Ann. art. 6252-16a, since repealed). (1) The jury returned
a verdict in appellee's favor, awarding damages and attorney's fees. The County appeals in eight
issues. We will affirm the trial court's judgment.


BACKGROUND


 Cynthia Wymola began working for the Robertson County Sheriff's Department
as a jailer and dispatcher in 1989. Her responsibilities included acting as jailer for female
inmates, fielding incoming phone calls, dispatching officers to disturbances, and operating a
control panel that unlocked doors in various parts of the jail facility.

 Cynthia Wymola was the victim of domestic violence. Wymola's ex-husband,
David Wymola, began abusing her in 1980. According to Wymola's testimony, the abuse
subsided for a period but resumed in 1985. Wymola testified that David would "pop her" on both
ears and push her down. The Wymolas separated during 1992. On January 2, 1993, David came
to Wymola's house in Franklin, Texas, and attempted to rape her. Wymola's minor son
threatened David with a gun, and David left. The child called the Robertson County Sheriff's
Department to report the incident. Dispatcher Roger Ann Fulton received the call and dispatched
Franklin Police Officer Mike Glass to the scene.

 In the phone log, Fulton recorded the address and noted that an officer had been
dispatched but did not write down Wymola's name. Some time later, Sheriff Hurley met with
Fulton to discuss the incident. Fulton testified about their conversation, saying that Hurley told
her, "if it happens again, you're to write the name down. And then he said, don't send no more
policemen over there. And I said why? And he said just don't send anymore policemen over
there." Hurley testified that he told Fulton not to dispatch an officer without recording all
information but denied having told Fulton not to dispatch police to Wymola's residence.

 On January 8, Hurley called a meeting with Wymola to discuss the incident. 
Wymola testified that Hurley showed her the log and told her "that he did not appreciate an
officer or a person working in his department being involved in a domestic disturbance and having
to send someone to the residence." Wymola further testified that Hurley "advised me that I was
to never call again, that -- to handle my domestic -- my domestic affairs myself." Hurley testified
that he spoke with Wymola regarding the January 2 incident and that he also told her to keep
unauthorized people out of the control room. Hurley read into evidence his note on the January
8 meeting that read, "8 a.m., talked Cindy Wymola about calling her residence that was made at
-- made by city of Franklin officer R-19 at 1:11 a.m., 1/2/93, and guns being involved. I advised
her to keep unauthorized personnel out of the jail (control room)."

 On January 17, Wymola had David admitted to a psychiatric treatment facility and
called her supervisor, Robertson County Jail Administrator Keith Robinson, to complain about
Hurley's statements. Robinson testified that Wymola told him, "that the sheriff had violated her
constitutional rights." Wymola characterized the report as a complaint that she was being denied
"equal protection under the law" and testified that she told Robinson that Hurley "had no right
to tell me that I could not call the Sheriff's Department for help." Wymola testified that based
on Robinson's reaction during the conversation, she felt that she had made a mistake by
complaining. Hurley testified that Robinson told him about Wymola's report before Wymola was
terminated.

 On January 27, following his release from the treatment facility, David Wymola
came to the jail to pick up the family checkbook. Wymola unlocked the door from the front office
to the visitation room and tried to pass the checkbook through a mail slot in the door of the locked
control room, but the checkbook would not fit. Wymola then unlocked the door from the
visitation room to the jail's interior hallway so that she could pass David the checkbook through
a second, larger slot. The record contains no evidence that Wymola unlocked the control room
at any point. David took the checkbook and left.

 Robertson County Chief Deputy Bobby Mathis was present in the front office when
David arrived. After David left, Mathis contacted Sheriff Hurley and wrote a report of Wymola's
actions. Hurley returned to the facility and summoned Wymola into his office. Hurley made a
note that the decision to fire Wymola occurred "[a]fter reviewing the report that she had broken
the security of the jail, by letting her husband into the secured area of the jail, and after
disobeying order that I had told her to keep all unauthorized persons out of the jail on January 8,
1993." Several witnesses testified that Wymola stated that she had been told she was being fired
for letting David into the jail. Wymola testified that she called an attorney on January 27 because
she thought her report to Robinson had been the basis for her termination.

 Wymola filed suit in Travis County, where the case was tried to a jury. The court
rendered judgment on the jury's verdict awarding $36,967 in actual damages, $30,000 in punitive
damages, $21,755.49 in pre-judgment interest on the actual damages, and $132,798.78 in
attorney's fees. (2) After the trial court overruled its motion for new trial, Robertson County
perfected this appeal.


DISCUSSION


 In eight issues, Robertson County contends that the trial court erred in: (1)
rendering judgment because Wymola failed to request or obtain a favorable jury verdict on
whether her report was made to an "appropriate law enforcement authority"; (2) rendering
judgment because the Robertson County Sheriff's Department was not an "appropriate law
enforcement authority" as a matter of law; (3) (3) rendering judgment because Wymola did not
report a "violation of law" within the ambit of the statute; (4) failing to submit the County's
proffered causation instruction; (5) assessing pre-judgment and post-judgment interest against the
County because the County is immune from the imposition of such interest; (6) excluding evidence
regarding Wymola's contingent fee arrangement with her attorney; (7) excluding a witness's
testimony; and (8) awarding mental anguish damages because there was insufficient evidence to
support them. (4)


Appropriate Law Enforcement Authority

 In its first issue, the County argues that Wymola was required to obtain a jury
verdict on whether her report was made to an "appropriate law enforcement authority." In its
second issue, the County urges that neither Keith Robinson nor the Sheriff's Department was an
"appropriate authority." And in its sixth issue, the County complains that Wymola's report that
Hurley violated her constitutional rights fails to satisfy the definition of "violation of statute"
under the Whistleblower Act (the Act). We disagree.

 The Act in effect at the time Wymola was discharged provided in pertinent part that
"[a] state or local government body may not . . . terminate the employment of . . . a public
employee who reports a violation of law to an appropriate law enforcement authority if the report
is made in good faith." Tex. Rev. Civ. Stat. Ann. art. 6252-16a, § 2. Under the pre-codified
Act, "appropriate law enforcement authority" was undefined, and this Court determined that the
phrase had no special, technical meaning apart from its ordinary meaning. See City of Brenham
v. Honerkamp, 950 S.W.2d 760, 768 (Tex. App.--Austin 1997, pet. denied). This Court also held
that under the pre-codified Act "appropriate authority" included "at minimum any public authority
having the power and duty of inquiring into the lawfulness of the questioned conduct and causing
its cessation if the conduct appears to be in violation of the law." Travis County v. Colunga, 753
S.W.2d 716, 719 (Tex. App.--Austin 1988, writ denied) (emphasis added).

 The County contends that neither Robinson nor the Sheriff's Department is an
"appropriate law enforcement authority" as a matter of law. To address this issue, we must
decide whether "appropriate authority" is to be determined on the basis of the individual or the
entity that receives the report. In the Act, "authority" is used in the singular to refer to the
government. The dictionary states that such usage indicates an abstract concept (e.g., "the public
authority"). See Webster's Third New International Dictionary 146 (Philip B. Gove ed., 1961). (5) 
Thus the plain meaning of "authority" indicates that in determining whether a report was made
to an "appropriate law enforcement authority," we should look at the entity that received the
report rather than the specific individual to whom the report was made. Although case law does
not explicitly hold that "appropriate authority" should be determined on the entity level, there are
indications that "authority" is equated with entity. See Castaneda v. Texas Dep't of Agriculture,
831 S.W.2d 501, 504 (Tex. App.--Corpus Christi 1992, writ denied) (defining authority in terms
of "entity"). In response to questioning at oral argument, the County conceded that the proper
inquiry is whether the entity that received the report was an "appropriate law enforcement
authority" and argued that the Sheriff's Department was not an "appropriate authority." (6) 
Therefore, we will analyze the County's arguments to determine whether the Department was an
"appropriate authority."

 In its second issue, the County argues that the Sheriff's Department, as a matter
of law, is not an "appropriate law enforcement authority." The County argues that because no
one in the Sheriff's Department has supervisory capacity over the Sheriff, no one in the
Department has the power to investigate or remedy the reported wrong; therefore, the County
contends the Sheriff's Department is not an "appropriate law enforcement authority." To support
its contention that an "appropriate authority" must be in a supervisory capacity over the person
being reported, the County relies on City of Dallas v. Moreau, 697 S.W.2d 472 (Tex. App.--Dallas
1985, no writ). We disagree with the County's reading of Moreau.

 In Moreau, a bailiff spoke with various other bailiffs and judges about judicial
conduct that he believed was inappropriate. See id. at 475. The court held that none of these
people was an appropriate authority as a matter of law because, inter alia, none of them was in
a supervisory position vis-a-vis the judge. (7) See id. But the Moreau court explicitly limited its
ruling to the facts in that case. See id. In addition, the fact that the bailiffs and judges worked
within the judiciary is an important distinction. The judicial branch does not perform an
investigative or executive function. The Sheriff's Department, on the other hand, is a part of the
executive branch and is charged with investigating and enforcing the laws of the State. See Ex
parte Hall, 838 S.W.2d 674, 676 (Tex. App.--Dallas 1992, no writ) (Sheriff is member of
executive branch); Woomer v. City of Galveston, 765 S.W.2d 836, 839 (Tex. App.--Houston [1st
Dist.] 1988, writ denied) (Sheriff's Department has duty to investigate). We thus find that the
reasoning in Moreau offers little guidance.

 Wymola's charges were broadly phrased claims that Sheriff Hurley was violating
her constitutional rights. Under section 39.03 of the Penal Code, it is a Class A misdemeanor if
a "public servant . . . intentionally denies or impedes another in the exercise or enjoyment of any
right, privilege, power, or immunity, knowing his conduct is unlawful." Tex. Penal Code Ann.
§ 39.03 (West Supp. 2000) (emphasis added). (8) Although she did not refer to a particular section,
in substance Wymola accused Sheriff Hurley of violating section 39.03. Wymola alleged a
violation of statute, and thus her report was clearly within the ambit of the Act. (9) We therefore
need not address whether a violation of a constitutional right is covered by the Whistleblower
Act's definition, and we overrule the County's sixth issue. Further, because the Sheriff's
Department had the power and duty to investigate the alleged criminal violation, the Department
was, as a matter of law, an "appropriate law enforcement authority." We overrule the County's
second issue. (10)

 In its first issue, the County argues that Wymola failed to obtain a jury finding on
an element of her cause of action and that this Court should reverse the judgment and render
judgment in the County's favor. The County contends that whether Wymola made her report to
an "appropriate law enforcement authority" is a question of fact that should have been submitted
to the jury but was not. The County further argues that it objected to the omission of this
necessary element from the charge and tendered a substantially correct question and definition to
prevent a deemed finding on this issue. (11) See Tex. R. Civ. P. 279. Wymola contends, however,
that this issue is a question of law.

 Assuming without deciding that the County is correct that this determination is a
question of fact, we do not believe the trial court erred in refusing to give an instruction on the
issue. A fact issue that is established with uncontroverted evidence and is not in dispute should
not be submitted to the jury. See T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218,
223 (Tex. 1992). None of the material facts germane to this issue were disputed. There is no
dispute that Wymola made a complaint to Keith Robinson. Nor is it disputed that Robinson
worked for the Sheriff's Department as administrator of the Robertson County jail. As noted
above, case law and plain meaning indicate that the question of whether a report was made to an
"appropriate authority" should be determined based on the entity that received the report. 
Because there was no factual dispute regarding if or to whom a complaint was made, the court
could have determined this issue--whether the Sheriff's Department was an "appropriate
authority"--as a matter of law. (12) Therefore, the trial court need not have instructed the jury on this
issue. See id. We overrule the County's first issue.


Causation

 The County argues in its third issue that the trial court erred in refusing to submit
its instruction on causation. To preserve error on the instruction, the County had to provide the
court with a substantially correct version of the instruction. See Tex. R. Civ. P. 278; Texas Dept.
of Human Servs. v. Hinds, 904 S.W.2d 629, 637 (Tex. 1995); Texas Natural Resource
Conservation Comm'n v. McDill, 914 S.W.2d 718, 724 (Tex. App.--Austin 1996, no writ). The
County objected to the question on causation and submitted both a substitute question and an
instruction. Although the objection would have been sufficient to preserve an error in the
question, the County is complaining on appeal that the court erred in refusing its instruction. 
Thus, the submitted instruction must have been in substantially correct form to have preserved
error. See Willis v. Maverick, 760 S.W.2d 642, 647 (Tex. 1988) (when questions, definitions,
and instructions are submitted in cluster, if any element is defective, entire cluster is not
substantially correct).

 We hold that the County's instruction was not substantially correct. The County's
tendered instruction read in pertinent part, "You [the jury] are further instructed that if you
believe by a preponderance of the evidence that Sheriff Hurley discharged the Plaintiff for
violating policies of the jail prohibiting unauthorized personnel into the secured area, you must
find for Robertson County, Texas." This instruction implies that the County could disprove
Wymola's whistleblower claim merely by proving that Wymola's report was not the sole cause
for her termination. The supreme court has clearly stated that a plaintiff in this type of action
need not prove that the whistleblowing activity was the sole cause for termination. See Hinds,
904 S.W.2d at 634. Because this instruction was incorrect, the entire request was not
substantially correct. See Willis, 760 S.W.2d at 647. Without a substantially correct request, the
County has not preserved this issue regarding the causation instruction. See Tex. R. Civ. P. 278. 
We overrule the County's third issue.


Recovery of Pre- and Post-Judgment Interest

 In its fourth issue, the County argues that the trial court erred in rendering
judgment against Robertson County for the recovery of pre-judgment and post-judgment interest
because the legislature has not waived sovereign immunity to allow for the recovery of interest. 
We disagree.

 As a preliminary issue, we note that the County is not contesting the amount of
interest awarded or the manner in which it was calculated. Instead, the County's sole claim is that
sovereign immunity bars any award of interest against the County. This Court has previously
affirmed cases in which pre-judgment interest was awarded and the award thereof was not
specifically challenged. See, e.g., City of San Antonio v. Heim, 932 S.W.2d 287 (Tex.
App.--Austin 1996, writ denied); Texas Dep't of Human Servs. v. Green, 855 S.W.2d 136 (Tex.
App.--Austin 1993, writ denied). Here, the County is specifically attacking the award of pre-judgment interest by arguing that the legislature must expressly waive immunity to interest in
order for it to be assessed against a governmental entity.

 The Whistleblower Act provides that "[a] public employee who sues under this Act
may recover: (1) actual damages." Tex. Rev. Civ. Stat. Ann. art. 6252-16a, § 4(a)(1). "Actual
damages" is undefined. In the absence of a statutory definition of "actual damages," we look to
the common law measure of damages. See Brown v. American Transfer & Storage Co., 601
S.W.2d 931, 939 (Tex.1980) (actual damages under Deceptive Trade Practices Act); Waldon v.
Williams, 760 S.W.2d 833, 835 (Tex. App.--Austin 1988, no writ) (actual damages under pre-1989
section 92.056 of Property Code); Frank B. Hall & Co. v. Beach, Inc., 733 S.W.2d 251, 265
(Tex. App.--Corpus Christi 1987, writ ref'd n.r.e.) (actual damages under article 21.21 of
Insurance Code).

 The purpose of awarding actual damages has always been to compensate the injured
plaintiff, and a law that denies recovery of pre-judgment interest frustrates this goal. See Cavnar
v. Quality Control Parking, Inc., 696 S.W.2d 549, 552 (Tex. 1985), modified on other grounds,
Johnson & Higgins, Inc. v. Kenneco Energy, 962 S.W.2d 507 (Tex. 1998) (changing time frame
for computing common law pre-judgment interest to mirror statutory scheme). If a judgment is
limited to the amount of damages sustained at the time of the incident, plaintiffs are not fully
compensated. See Cavnar, 696 S.W.2d at 552. We disagree with courts that have characterized
pre-judgment interest as incidental rather than actual damage. See, e.g., Bayou Terrace Inv.
Corp. v. Lyles, 881 S.W.2d 810, 816 (Tex. App.--Houston [1st Dist.] 1994, no writ). In this case,
the trial court awarded Wymola pre-judgment interest for the period between the filing of her
claim and the time of judgment. Such interest was intended to put Wymola as close as possible
to the position she would have occupied but for the defendant's wrong by compensating her for
the fact that during the pendency of the case she was denied the opportunity to use and invest her
damages. See Cavnar, 696 S.W.2d at 552. Because an award of pre-judgment interest attempts
to put a plaintiff back into her pre-injury position, we believe pre-judgment interest is properly
a component of actual damages for which immunity has clearly been waived by the Whistleblower
Act. We overrule the County's issue as to pre-judgment interest.

 The County further argues that a judgment against it for damages resulting from
violation of the Whistleblower Act cannot bear interest because the legislature has not expressly
waived sovereign immunity for post-judgment interest. We first note that the record contains no
indication that the County raised this issue before the trial court. Post-judgment interest was not
mentioned in the County's motion for judgment non obstante veredicto nor was it raised at the
hearing on that motion. A letter brief filed by the County with the trial court addresses only its
complaint concerning pre-judgment interest. In addition, no mention of immunity from interest
was made in the County's motion for new trial. A governmental entity's immunity from suit is
a jurisdictional issue that may be raised for the first time on appeal. See Texas Dep't of Transp.
v. Jones, 8 S.W.3d 636, 638 (Tex. 1999). Immunity from liability, on the other hand, is an
affirmative defense and must be pleaded or else it is waived. See id. Because the County attempts
to assert immunity from liability for post-judgment interest and did not raise this issue before the
trial court, the County may not raise it for the first time on appeal. See Tex. R. App. P. 33.1. 
In any event, every valid judgment bears post-judgment interest under the law. See Tex. Fin.
Code Ann. §§ 304.002, .003 (West Supp. 2000). We overrule the County's fourth issue.


Exclusion of Contingent Fee Arrangement

 In its fifth issue, the County complains that the trial court erred by excluding
evidence of the contingent fee arrangement between Wymola and her attorneys. We disagree.

 The admission or exclusion of evidence is committed to the trial court's sound
discretion. See City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995). A party
seeking to reverse a judgment based on the admission or exclusion of evidence must show that the
evidence was erroneously admitted or excluded and that the error probably caused rendition of
an improper judgment. See id.; see also Tex. R. App. P. 44.1(a)(1). A trial court abuses its
discretion when it acts in an unreasonable and arbitrary manner or without reference to any
guiding rules or principles. See Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42
(Tex. 1985). This Court may not reverse for abuse of discretion merely because we disagree with
the decision of the trial court. See id. at 242.

 The Whistleblower Act provides that a public employee who sues under the Act
may recover "reasonable attorney's fees." Tex. Rev. Civ. Stat. Ann. art. 6252-16a, § 4(4). In
determining what constituted "reasonable attorney's fees" in the context of the Deceptive Trade
Practices Act, the supreme court looked to attorney discipline rules. See Arthur Andersen & Co.
v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997). The County urges that the same
factors should be applied in this case.

 In Arthur Andersen, the supreme court addressed a complaint that a trial court erred
by awarding fees calculated as a percentage of recovery based on a contingent fee agreement. See
id. at 817. The supreme court was concerned that an award of attorney's fees based solely on the
contingency contract did not take into account the factors regarding what constitutes a
"reasonable" fee. See id. at 818. The court stated that a contingency agreement alone was
insufficient evidence of what was a "reasonable" fee and therefore could not support a fee award
under a statute authorizing recovery of "reasonable" fees. See id. at 818-19. The court also
stated that "[a] party's contingent fee agreement should be considered by the fact finder and is
therefore admissible evidence." Id. at 818 (citation omitted).

 Here, the court was faced with the opposite issue of the problem presented in
Arthur Andersen. Wymola and her attorney had a contingent fee agreement, but Wymola did not
want this fact revealed to the jury. Wymola's attorney argued that evidence of the nature of the
attorney-client fee arrangement was irrelevant because he was testifying as to his regular hourly
rate without making adjustment for the risk involved in a contingent fee case. In denying the
County's proffer, the court stated on the record that because Wymola did not request that the jury
take risk into account in determining what was reasonable, Andersen did not control the situation. 

 We do not believe the trial court abused its discretion in making this decision. In
Arthur Andersen, the supreme court declared that evidence of a contingent fee arrangement was
"admissible" and "should" be considered by the fact finder. See id. But the court did not
mandate that such evidence must be admitted or considered. The opinion in Arthur Andersen
gives no indication that the supreme court intended to deprive trial courts of their discretion. In
this case, the trial court decided in its discretion that evidence of the contingent fee arrangement
was not relevant. Arthur Andersen involved a very different factual situation in which the jury
was presented with no evidence regarding reasonable fees other than the contingent fee agreement. 
Here, Wymola's attorney testified regarding a number of the factors addressed in Arthur Andersen
including the time and labor involved, the novelty and difficulty involved, the fee customarily
charged in the locality for similar legal services, the time limitation imposed by circumstances,
and the education and experience of the attorneys. Given the facts of this case, we hold that the
trial court did not abuse its discretion in excluding evidence of Wymola's contingent fee
agreement.

 The County further argues that the trial court erred in refusing its request that the
jury be instructed on the Arthur Andersen factors. Other than Arthur Andersen, the County cites
no authority for the proposition that jurors must be instructed regarding these factors. In Arthur
Andersen, the supreme court did not state that the jury must be instructed regarding the factors
but instead stated that the jury must be presented with evidence of the factors and instructed to
award a dollar amount rather than a percentage. See id. at 819. As noted above, the record
contains uncontroverted evidence of a number of the Arthur Andersen factors, and the charge
correctly required the jury to assess attorney's fees in dollar terms. Because the trial court met
the Arthur Andersen requirements and the County points to no other authority that entitled it to
the requested instruction, we hold that the trial court did not abuse its discretion in refusing to
instruct the jury regarding the factors. We overrule the County's fifth issue.


Exclusion of Wayne Huggins's Testimony

 In its seventh issue, the County contends that the trial court erred in limiting the
testimony of Officer Wayne Huggins. The County argues that Huggins's testimony explained why
the rule regarding jail security was enforced more strictly against Wymola than it was against
other employees by establishing that Wymola had previously violated jail security. Wymola
responds by arguing that the probative value of Huggins's testimony was substantially outweighed
by the risk of unfair prejudice. See Tex. R. Evid. 403.

 As previously noted, admitting and excluding evidence are matters within the trial
court's discretion. To obtain reversal of a judgment based on error in the admission or exclusion
of evidence, the County must show that the trial court's ruling was in error and that the error was
calculated to cause and probably did cause rendition of an improper judgment. See Exxon Corp.
v. West Texas Gathering Co., 868 S.W.2d 299, 303 (Tex. 1993); Lubbock County v. Strube, 953
S.W.2d 847, 855 (Tex. App.--Austin 1997, pet. denied); Tex. R. App. P. 44.1(a).

 In a bill of exception, Huggins stated that he and Wymola had an intimate
relationship while Wymola was still married, that Wymola allowed Huggins into the control room
regardless of whether he had business at the jail, and that Hurley banned Huggins from the jail
to "prevent a scandal or a problem within his department." Portions of this testimony do explain
why the rules regarding jail security might have been enforced more strictly against Wymola and
are therefore clearly relevant. But Hurley testified that the breach of security that led to
Wymola's termination involved David Wymola, not Officer Huggins. In fact, Hurley made no
mention of Huggins in his testimony. Because the portions of Huggins's testimony regarding his
relationship with Wymola were clearly prejudicial and because the County could have elicited
testimony regarding Wymola's alleged breaches in security from other witnesses, we hold the
County has not shown that the trial court abused its discretion by limiting Huggins's testimony. 
We overrule the County's seventh issue.


Sufficiency of the Evidence for Mental Anguish Damages

 In its eighth issue, the County argues that the evidence is legally and factually
insufficient to support the jury's award of mental anguish damages. (13) In reviewing evidence under
a legal insufficiency point, we consider all the evidence in the light most favorable to the
prevailing party, indulging every reasonable inference in that party's favor. See Associated
Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 285-86 (Tex. 1998); Transportation
Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994); Best v. Ryan Auto Group, Inc., 786 S.W.2d
670, 671 (Tex. 1990). We will uphold a finding if more than a scintilla of evidence supports it. 
See Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995); Seideneck v. Cal
Bayreuther Assocs., 451 S.W.2d 752, 755 (Tex. 1970); In re King's Estate, 244 S.W.2d 660, 661
(Tex. 1951). The evidence supporting a finding amounts to more than a scintilla if reasonable
minds could arrive at the finding given the facts proved in the particular case. See Crye, 907
S.W.2d at 499; Moriel, 879 S.W.2d at 25. When reviewing a jury verdict to determine the
factual sufficiency of the evidence, we must consider and weigh all the evidence and should set
aside the judgment only if the evidence is so weak or so contrary to the overwhelming weight of
the evidence as to be clearly wrong and unjust. See Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). We will not substitute our judgment
for that of the trier of fact merely because we reach a different conclusion. See Westech Eng'g,
Inc. v. Clearwater Constructors, Inc., 835 S.W.2d 190, 196 (Tex. App.--Austin 1992 , no writ).

 Citing both the supreme court and this Court, the County contends that Wymola
was required to prove the duration of her anguish and that the anguish caused a substantial
disruption in her daily routine. See Saenz v. Fidelity & Guar. Ins. Underwriters, 925 S.W.2d
607, 614 (Tex. 1996); Strube, 953 S.W.2d at 856-57. The County mischaracterizes both cases.

 In Strube, this Court dealt with the issue of whether evidence supported an award
of damages for future mental anguish. See Strube, 953 S.W.2d at 856. Our decision that the
record did not support the award turned on the fact that Strube testified that the mental anguish
had occurred in the past and did not testify that she expected it to recur. See id. at 857. Because
the decision in Strube was based on case-specific testimony and dealt with the issue of future,
rather than past, mental anguish damages, we find that it offers little guidance in this case.

 In Saenz, the supreme court reiterated the standard of evidence required to support
an award of mental anguish damages. See Saenz, 925 S.W.2d at 614 (quoting Parkway Co. v.
Woodruff, 901 S.W.2d 434 (Tex.1995)).


[M]ental anguish damages could not be awarded without either direct evidence of
the nature, duration, or severity of [plaintiffs'] anguish, thus establishing a
substantial disruption in the plaintiffs' daily routine, or other evidence of a high
degree of mental pain and distress that is more than mere worry, anxiety, vexation,
embarrassment, or anger.



Id. (emphasis added) (internal citation and quotation marks omitted). Saenz requires that a
plaintiff provide evidence of a high degree of mental pain and distress. Saenz does not prescribe
the specific content or form of the evidence and instead offers plaintiffs a number of alternatives
to prove mental anguish.

 In Saenz, the only testimony regarding mental anguish was Saenz's testimony that
she "worried a lot" about the loss of income and being unable to pay future medical bills. See
Saenz, 925 S.W.2d at 614. The record here contains far more evidence than the record in Saenz. 
Wymola testified that after she was fired, she "felt like my whole world had completely fallen
apart." When asked how she felt, she said, "I was terrified. I did not know where to go, where
to turn. The only thing, honestly, that kept me from blowing my brains out were my two kids. 
Because at that point, I really didn't have any reason to go on." Wymola went on to testify how
the distress caused by the loss of her job was different from the emotional trauma caused by her
abusive husband. She characterized the loss of her job as a "deep loss," "devastating," and
"overwhelming." We hold that the record contains more than a scintilla of evidence regarding
the severity of Wymola's distress and that the award of mental anguish damages is fair and
reasonable and not so contrary to the overwhelming weight of the evidence as to be clearly wrong
or unjust. We overrule the County's eighth issue.


CONCLUSION


 Having overruled all of the County's issues, we affirm the judgment of the trial
court.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Smith and Yeakel 

Affirmed

Filed: April 13, 2000

Publish
1. Wymola's claim was brought prior to September 1, 1993, when the revised and codified
version of the Whistleblower Act took effect. See Tex. Gov't Code Ann. §§ 554.001-.010 (West
1994 & Supp. 2000). All references are to former article 6252-16a.
2. Interest was computed at ten percent simple interest for the period between the filing of
the suit and the day before the judgment was signed. The order states that the attorney's fees are
to be adjusted according to the extent to which the County appeals the judgment. 
3.   In its brief, the County argued that Keith Robinson was not an "appropriate authority." 
At oral argument, the County admitted that a distinction based on which person within a particular
agency or entity received the report would be artificial. The County conceded that the proper
determination was whether the entity--i.e., the Sheriff's Department--was an "appropriate
authority."
4.   The County does not challenge the sufficiency of the evidence to support the jury's
findings beyond arguing that the evidence does not support the award of mental anguish damages. 

5. The dictionary states that the plural form "authorities" is generally used to refer to the
concrete, i.e., individuals. See Webster's Third New International Dictionary 146 (Philip B. Gove
ed., 1961).
6. As noted, this case is subject to the pre-codified Act. The amended version of the Act
codifies case law regarding the meaning of "a report . . . to an appropriate law enforcement
authority" but defines the concept in terms of "the authority." See Tex. Gov't Code Ann.
§ 504.002 (West Supp. 2000). Therefore we believe our reasoning applies equally to the current
law and that whether a report is made to an "appropriate authority" is determined based on the
entity rather than the individual under either version of the Act.
7. The Moreau court stated that Moreau also spoke with members of the city attorney's
staff. Although the opinion does not explicitly say so, we can only assume that these staff
members did not have the power to bring charges against the judge. Otherwise, the court's
conclusion that the city attorney's staff members were not "appropriate" directly contradicts its
reasoning that "appropriate" includes having "the power to arrest, prosecute or otherwise
discipline on account of an alleged violation being reported." City of Dallas v. Moreau, 697
S.W.2d 472, 474 (Tex. App.--Dallas 1985, no writ) (emphasis added).
8.   The Penal Code defines public servant to include "an officer, employee, or agent of
government." See Tex. Penal Code Ann. § 1.07(41)(a) (West Supp. 2000).


 At the time Wymola made her report, current section 39.03 was section 39.02. The
Legislature renumbered the section effective September 1, 1994 but made no substantive changes. 
See Act of May 29, 1993, 73d Leg., ch. 900, §1.01, Tex. Gen. Laws 3586, 3674.
9.   Article 6252-16a provides, in pertinent part, "'Law' means a state or federal statute." 
Tex. Rev. Civ. Stat. Ann. art. 6252-16a, § 1(1). 
10.   The County implies--but does not explicitly argue--that Wymola failed to establish that
her report was made in good faith because Wymola admitted that Robinson was not a law
enforcement officer, that he worked for the Sheriff, and that she did not expect Robinson to
personally investigate the Sheriff or stop the Sheriff from "running the jail the way he was
running it." We disagree for two reasons. First, the requirement that a report be made in good
faith refers to whether the complainant believed in good faith the reported behavior violated the
law and not whether the employee believed in good faith that the entity receiving the report had
the power to act upon it. See Wichita County v. Hart, 917 S.W.2d 779, 784-85 (Tex. 1996). 
Second, even if good faith referred to the employee's subjective belief that the recipient of a report
could remedy the alleged wrong, the record establishes that Wymola had such a subjective belief. 
Even after making the admissions the County cites, Wymola maintained that she "had faith that
[Robinson] was going to do something." 
11. We question whether the County's tendered question was substantially correct. The
question was accompanied by a definition citing language from this Court defining "appropriate
law enforcement authority" to include "at minimum any public authority having the power and
duty of inquiring into the lawfulness of the questioned conduct and causing its cessation." Travis
County v. Colunga, 753 S.W.2d 716, 719-20 (Tex. App.--Austin 1988, writ denied) (emphasis
added). However, the tendered definition omitted "at minimum" and thus characterized an
inclusive definition as exclusive. However, this issue is not dispositive, and we will not address
it further. Because the missing element was a question on a finding on which Wymola had the
burden of proof, the County's objection to the omission of the question was sufficient to preserve
error. See Tex. R. Civ. P. 278. 
12. Several cases have stated that questions of fact can become questions of law if there is
no dispute as to any material fact and reasonable minds cannot differ. See, e.g., Logan v. Mullis,
686 S.W.2d 605, 608 (Tex. 1985). Questions of fact, although suitable for jury consideration,
can be decided as a matter of law and need not be addressed by a fact finder when the evidence
is conclusive. See generally William Powers, Jr. & Jack Ratliff, Another Look at "No Evidence"
and "Insufficient Evidence," 69 Tex. L. Rev. 515 (1991).
13. We note that the County does not argue that the evidence does not support the amount
awarded but instead argues that the evidence does not support awarding mental anguish damages
in any amount. Cf. Casteel v. Crown Life Ins. Co., 3 S.W.3d 582, 593 (Tex. App.--Austin, 1997)
(attack on sufficiency of evidence to support amount awarded), reversed on other grounds, 43 S.
Ct. J. 348 (Jan. 27, 2000). 



;504.002 (West Supp. 2000). Therefore we believe our reasoning applies equally to the current
law and that whether a report is made to an "appropriate authority" is determined based on the
entity rather than the individual under either version of the Act.
7. The Moreau court stated that Moreau also spoke with members of the city attorney's
staff. Although the opinion does not explicitly say so, we can only assume that these staff
members did not have the power to bring charges against the judge. Otherwise, the court's
conclusion that the city attorney's staff members were not "appropriate" directly contradicts its
reasoning that "appropriate" includes having "the power to arrest, prosecute or otherwise
discipline on account of an alleged violation being reported." City of Dallas v. Moreau, 697
S.W.2d 472, 474 (Tex. App.--Dallas 1985, no writ) (emphasis added).
8.   The Penal Code defines public servant to include "an officer, employee, or agent of
government." See Tex. Penal Code Ann. § 1.07(41)(a) (West Supp. 2000).


 At the time Wymola made her report, current section 39.03 was section 39.02. The
Legislature renumbered the section effective September 1, 1994 but made no substantive changes. 
See Act of May 29, 1993, 73d Leg., ch. 900, §1.01, Tex. Gen. Laws 3586, 3674.
9.   Article 6252-16a provides, in pertinent part, "'Law' means a state or federal statute." 
Tex. Rev. Civ. Stat. Ann. art. 6252-16a, § 1(1). 
10.   The County implies--but does not explicitly argue--that Wymola failed to establish that
her report was made in good faith because Wymola admitted that Robinson was not a law
enforcement officer, that he worked for the Sheriff, and that she did not expect Robinson to
personally investigate the Sheriff or stop the Sheriff from "running the jail the way he was
running it." We disagree for two reasons. First, the requirement that a report be made in good
faith refers to whether the complainant believed in good faith the reported behavior violated the
law and not whether the employee believed in good faith that the entity receiving the report had
the power to act upon it. See Wichita County v. Hart, 917 S.W.2d 779, 784-85 (Tex. 1996). 
Second, even if good faith referred to the employee's subjective belief that the recipient of a report
could remedy the alleged wrong, the record establishes that Wymola had such a subjective belief. 
Even after making the admissions the County cites, Wymola maintained that she "had faith that
[Robinson] was going to do something."