**COUNTY OF BEXAR and Bexar County Sheriff's Department, Appellants,**

v.

**Kenneth STEWARD, Appellee.**

No. 04–03–00580–CV.

Court of Appeals of Texas, San Antonio.

May 12, 2004.

Sue Ann Gregory, Asst. Criminal Dist. Atty., San Antonio, for appellants.

Kenneth Steward, San Antonio, pro se.

Sitting: ALMA L. LÓPEZ, Chief Justice, KAREN ANGELINI, Justice, and PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by PHYLIS J. SPEEDLIN, Justice.

The County of Bexar and the Bexar County Sheriff's Department (collectively the "County") appeal the trial court's order denying their plea to the jurisdiction. The County contends that the trial court erred in denying the plea because the petition filed by Kenneth Steward ("Steward") failed to state a cause of action under the Texas Whistleblower Act. We reverse the trial court's order and dismiss Steward's claims against the County.

### BACKGROUND

In 1999, Steward became a sergeant with the Bexar County Sheriff's Department (the "Department"). Steward had been employed by the Department since 1990.

On April 10, 2001, Steward filed an information report with the Department. The report complained of inconsistencies in the amount of money reported to be in the general fund of the Bexar County Sheriff's Department Law Enforcement Organization ("LEO").

On June 4, 2001, Steward was given notice of a proposed demotion for: (1) insubordination-unwilling to submit to authority; and (2) conduct or action that would seriously impair job effectiveness. The notice stated that on two occasions Steward failed to comply with a direct order given by his superior officer. Specifically, on May 28, 2001, Lt. Bill White ordered Steward to submit a written report, but Steward responded by submitting a letter requesting that the order be put in writing[1]. Then, on May 30, 2001, White ordered Steward for a second time to comply with the previous order. Instead of submitting the written report, Steward provided White with a personal grievance. In the grievance, Steward asserted that White's orders were for purposes of harassing him because he was campaigning for president of LEO. Steward further asserted that White told Steward that White's orders were at the direction of White's supervisor, Chief Baker. Steward's grievance summarized that he believed he was being mistreated and reta-

---

1. In his personal grievance, Steward states, "It has been a policy of this department to issue written directives and orders."

liated against because: (1) he filed the information report; (2) he had "a lot to offer as LEO president" and had "expressed [his] desire to serve in [that] position"; and (3) he was a member of "the DSABC labor organization." The solutions Steward proposed in his grievance included White ceasing to harass him and a meeting with the sheriff to discuss the matter.

Steward's order of demotion was enacted on August 15, 2001; however, Steward was later reinstated after he grieved his demotion to the Bexar County Sheriff's Civil Service Commission. Steward subsequently sued the County based on the Texas Whistleblower Act. Steward alleged that an adverse employment action was taken against him "because he had reported in good faith a violation of law or laws to an appropriate law enforcement agency or authority, Defendants herein, to wit: Plaintiff reported incidents of obstruction or retaliation, abuse of official capacity and misapplication of fiduciary property to the BEXAR COUNTY SHERIFF'S DEPARTMENT."

Steward bases his claim on four instances in which he contends that he reported a violation of a law. First, Steward relies on the information report that he filed with the Department on April 10, 2001. Second, he relies on the personal grievance he provided to White on May 30, 2001. Third, Steward relies on a conversation he had with Sgt. Eric Colbert, who worked in the Department's Internal Affairs section, on June 6, 2001. Finally, Steward relies on a conversation he had with a Texas Ranger about LEO's misapplication of money.

The County filed a plea to the jurisdiction, asserting that these factual allegations were insufficient to state a cause of action under the Whistleblower Act. The trial court denied the plea, and the County filed this accelerated appeal.

## STANDARD OF REVIEW

■ We review a trial court's ruling on a plea to the jurisdiction under a de novo standard of review. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998). A plea to the jurisdiction challenges the trial court's authority to consider the subject matter of a specific cause of action. *Rylander v. Caldwell,* 23 S.W.3d 132, 135 (Tex.App.-Austin 2000, no pet.). In order to establish subject matter jurisdiction, the pleader must allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). When reviewing a ruling on a plea to the jurisdiction, we accept the allegations in the petition as true and construe them in favor of the pleader. *Id.; Bexar County v. Lopez,* 94 S.W.3d 711, 713 (Tex.App.-San Antonio 2002, no pet.). In addition to the pleadings, a court may also consider other relevant evidence and must do so when necessary to resolve the jurisdictional issues raised. *Bland Ind. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000).

## DISCUSSION

■ The Texas Whistleblower Act prohibits a state or local governmental entity from taking adverse personnel action against "a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." TEX. GOV'T CODE ANN. § 554.002(a) (Vernon Supp.2004). To establish a claim under the Whistleblower Act, the plaintiff must allege the following elements: (1) he is a public employee; (2) he acted in good faith in making the report; (3) the reported involved a violation

of law; (4) the report was made to an appropriate law enforcement authority; and (5) he suffered retaliation as a result of making the report. *See id.; see also Lopez,* 94 S.W.3d at 714.

A. Information Report and Report to Texas Ranger

■ The County contends that Steward's allegation regarding the information report does not state a cause of action under the Whistleblower Act because the reported violation was by LEO, not by his employing governmental entity or another public employee. Clearly, LEO was not Steward's employing governmental entity. "Public employee" is defined by the Whistleblower Act as "an employee or appointed officer other than an independent contractor who is paid to perform services for a state or local governmental entity." Tex. Gov't Code Ann. § 554.001(4) (Vernon 2004). In his deposition, Steward admitted that LEO is a private organization. Because LEO is not Steward's employing governmental entity or a public employee, Steward's allegation that he reported the misapplication of fiduciary property by LEO does not state a Whistleblower Act claim. For the same reason, Steward's allegation that he reported the misapplication of funds by LEO to the Texas Ranger does not state a cause of action.

B. Report to Internal Affairs

■ One of the elements Steward was required to establish in support of his claim is that he suffered retaliation as a result of making the report. Tex. Gov't Code Ann. § 554.002(a) (Vernon Supp. 2004); *Lopez,* 94 S.W.3d at 714. In order to meet this element, Steward must demonstrate that after he reported a violation of the law in good faith to an appropriate law enforcement authority, he suffered discriminatory conduct that would not have occurred when it did if he had not reported the illegal conduct. *City of Fort Worth v. Zimlich,* 29 S.W.3d 62, 67 (Tex.2000). In this case, the alleged discriminatory action was Steward's demotion. Steward was given notice of the demotion on June 4, 2001. Steward's conversation with Sgt. Colbert of Internal Affairs did not occur until after Steward had received the notice.[2] Therefore, Steward's allegation regarding his report to Sgt. Colbert does not state a Whistleblower Act claim because Steward's allegation fails the causation element of such a claim.[3]

C. Personal Grievance

■ One of the violations of law Steward alleges in his petition to have reported is abuse of official capacity. Abuse of official capacity is a criminal offense.[4] *See* Tex. Penal Code Ann. § 39.02 (Vernon 2003). At the hearing before the trial

2. Although Steward contends that the date the demotion was enacted is the controlling date, Steward does not cite any authority to support this contention, and the alleged retaliatory act of demoting Steward commenced on the date the notice was given.

3. Although we previously rejected the allegation regarding the report to the Texas Ranger because the alleged violation of the law was not by the employing governmental entity or another public employee, we note that the report to the Texas Ranger also occurred after Steward received the notice of demotion.

4. A public servant commits the offense of abuse of official capacity if, "with intent to obtain a benefit or with intent to harm or defraud another, he intentionally or knowingly: (1) violates a law relating to the public servant's office or employment; or (2) misuses government property, services, personnel, or any other thing of value belonging to the government that has come into the public servant's custody or possession by virtue of the public servant's office or employment." Tex. Pen.Code Ann. § 39.02 (Vernon 2003).

court, Steward's attorney argued that Steward reported the abuse of official capacity in his personal grievance.[5] Steward appears to be alleging that Steward's grievance reported that White misused his office in order to benefit by discovering the details of his campaign for LEO president. We note that Steward's failure to specify in his petition which particular provisions of the criminal statute the alleged conduct violated does not defeat jurisdiction over his claim. *See Ruiz v. City of San Antonio*, 966 S.W.2d 128, 131 (Tex. App.-Austin 1998, no pet.) (noting petition contained allegation that reported conduct violated a criminal statute even though particular provision of statute was not specified).

The County urges this court to construe the personal grievance as a complaint to a supervisor about wrongful conduct. The County contends that such a complaint does not constitute a report of a violation of a law to an appropriate law enforcement authority under the Whistleblower Act. The County asserts that a complaint made to a supervisor about the supervisor does not further the policy underlying the Whistleblower Act. The County cites *Huffman v. Office of Personnel Management*, 263 F.3d 1341 (Fed.Cir.2001), to support its contention.

In *Huffman*, an employee brought an action under the federal Whistleblower Protection Act of 1989 ("WPA"), claiming he was removed from his position after he made "protected disclosures" to his supervisor. 263 F.3d at 1344–45. One of the issues presented on appeal was "whether complaints to a supervisor about the supervisor's wrongful conduct constitute disclosures under the [WPA]." *Id.* at 1344. After discussing the definition of "disclo-

sure," the court reasoned that an employee is not making a "disclosure" of misconduct if the employee reports the misconduct to the wrongdoer. *Id.* at 1350. The court stated, "If the misconduct occurred, the wrongdoer necessarily knew of the conduct already because he is the one that engaged in the misconduct." *Id.* The court then concluded:

> The purpose of the statute is to encourage disclosures that are likely to remedy the wrong. The wrongdoer is not such a person. Extending the WPA to cover reports to a supervisor of the supervisor's own misconduct would also have drastic consequences. As we stated in *Willis*, "[d]iscussion and even disagreement with supervisors over job-related duties is a normal part of most occupations." If every complaint made to a supervisor concerning an employee's disagreement with the supervisor's actions were considered to be a disclosure protected under the WPA, virtually every employee who was disciplined could claim the protection of the Act. Although Congress intended that the WPA's coverage be broad, we think it unlikely that Congress intended the Act to extend that far, and we hold that it did not.

*Id.* (citations omitted).

The Fort Worth court has refused to follow *Huffman*. *See Rogers v. City of Fort Worth*, 89 S.W.3d 265 (Tex.App.-Fort Worth 2002, no pet.). In that case, Rogers, a temporary-duty deputy marshal, filed suit alleging a Whistleblower Act claim after he was terminated. *Rogers*, 89 S.W.3d at 273. The case was tried before the bench, and the trial court found that Rogers was terminated because he reported a violation of a Fort Worth City Ordinance by another deputy marshal, Gordon

---

5. Steward's attorney also argued that the personal grievance reported official oppression in violation of section 39.03 of the Texas Penal Code and misuse of official information in violation of section 39.06 of the Texas Penal Code.

Burrell, in the form of an Interoffice Correspondence ("IOC"). *Id.* Rogers was directed to write the IOC by City Marshal Jim Rutledge after a municipal court judge complained to Rutledge about an incident involving Burrell that Rogers had witnessed. *Id.* at 271–72. The reported conduct involved the violation of an ordinance that prohibited city employees, including deputy marshals, from defending persons in municipal court who were charged with the violation of city ordinances. *Id.* Specifically, Burrell reportedly pleaded with the judge several times to take a check from a prisoner he arrested who had ten capias warrants against him instead of requiring the prisoner to go to jail.[6]

The City contended that Rogers did not report a violation of the law unless he made his report primarily as a citizen, not as an employee. In rejecting the City's argument and the analysis in *Huffman,* the court noted the WPA was not the governing law, and nothing in the legislative history of the Whistleblower Act indicated an exception for public employees who reported violations of the law as part of their normal duties. *Id.* at 276. The court concluded, "*Huffman* is contrary to our own precedent and other Texas cases, which hold that a public employee who reports a violation of law in the course of his employment *is* protected by the Act." *Id.* (emphasis in original).

The IOC in *Rogers,* like the personal grievance in this case, was a report filed in the course of Rogers's employment. Unlike the instant case, however, the report involved a violation of the law by another employee and was not a report to the employee's supervisor about the supervisor's conduct. Similarly, in *Robertson County v. Wymola,* the Austin court found that a report of a violation of a law by a third person to an employee's supervisor in the normal course of employment was a report to an appropriate law enforcement authority. 17 S.W.3d 334 (Tex.App.-Austin 2000, pet. denied). In that case, Cynthia Wymola, a jailer and dispatcher for a sheriff's department, called her supervisor to complain about statements made by the sheriff that Wymola believed violated her constitutional rights and denied her equal protection. *Id.* at 338–39. Shortly after the report, Wymola was terminated. *Id.* at 339. The County argued that neither Wymola's supervisor nor the sheriff's department was an appropriate law enforcement authority. *Id.* at 340. The Austin court disagreed, noting that the court must look to the entity that received the report rather than the specific individual to whom the report was made. *Id.* at 340. Rejecting the argument that no one in the sheriff's department had supervisory capacity over the sheriff, the court asserted that the sheriff's department was "a part of the executive branch and is charged with investigating and enforcing the laws of the State." *Id.* at 341. Because Wymola reported the violation of the law to her supervisor, who worked for the sheriff's department as administrator of the Robertson County jail, the court concluded that Wymola had made a report to an appropriate law enforcement authority. *Id.* at 342; *see also Bexar County v. Lopez,* 94 S.W.3d 711, 712–13 (Tex.App.-San Antonio 2002, no pet.) (affirming denial of plea to the

---

**6.** The Fort Worth Marshal's Office General Orders Manual provides that a prisoner with four or more capias warrants must be taken directly to the Tarrant County Jail. *Rogers,* 89 S.W.3d at 271. Although the municipal court's cashiers commonly accepted checks before a prisoner was taken to jail, the clerk did not have a uniform policy about when checks would be accepted, and the cashier in this case refused to take a check. *Id.* The judge told Burrell "that he knew better than to bring a prisoner into her courtroom with ten capias warrants in hopes of paying by check rather than cash." *Id.*

jurisdiction based on report by an experienced law enforcement agent to his supervisor regarding violation of the law by a co-employee).

Each of the cited Texas cases is distinguishable from the instant case because in each of those cases the employee was reporting to his or her supervisor a violation of the law by another employee or by a third person, not a violation of the law by the employee's immediate supervisor to whom the report was being made. Notwithstanding this distinction, the reasoning of the Austin court in *Wymola* can be broadly read to support a finding that Steward's personal grievance was a report to an appropriate law enforcement authority. If we focus exclusively on the entity that received the personal grievance, i.e., the sheriff's department, we would be constrained to conclude that the report was made to an appropriate law enforcement authority. *See Wymola*, 17 S.W.3d at 340–41.

Focusing instead on the distinction that can be made between this case and *Wymola*, it does not appear that any Texas case has directly addressed the issue before us. That is, whether an experienced sheriff's deputy who complains in a personal grievance to his direct supervisor, who is a law enforcement official, about actions taken by his direct supervisor has in good faith reported a violation of the law to an appropriate law enforcement authority.[7] We limit our discussion of this issue to the facts of this case.

In order to establish a valid claim, Steward must show that he, in good faith, believed that he reported a violation of the law to an appropriate law enforcement authority. "Good faith" means: "(1) the employee believed the governmental entity was authorized to (a) regulate under or enforce the law alleged to be violated in the report, or (b) investigate or prosecute a violation of criminal law; and (2) the employee's belief was reasonable in light of the employee's training and experience." *Texas Dept. of Transportation v. Needham*, 82 S.W.3d 314, 321 (Tex.2002). The Texas Supreme Court has held that a peace officer's actions are to be more closely examined in evaluating the officer's good faith belief that an act is a violation of the law because the peace officer has more experience than those in other professions. *Harris County Precinct Four Constable Dept. v. Grabowski*, 922 S.W.2d 954, 956 (Tex.1996). Similarly, a peace officer's actions should be more closely examined in evaluating the officer's good faith belief that his report was to an appropriate law enforcement authority.

In this case, Steward's actions reflect his knowledge of the appropriate method to report a violation of the law because he filed an information report to report a violation of the law by LEO. Rather than file an information report regarding the actions taken by White, Steward chose to file a "personal grievance." Given the proximity in time between the filing of the information report and the personal grievance, we hold that the personal grievance filed by Steward was not a report filed in good faith with an appropriate law enforcement authority. Steward does not propose that White investigate or prosecute White's violation of the criminal law or

---

7. In *Town of Flower Mound v. Teague*, the Fort Worth court distinguished between a report filed by two police officers with the district attorney and an employee grievance the officers filed regarding an alleged cover-up by their immediate supervisor. 111 S.W.3d 742, 754 (Tex.App.-Fort Worth 2003, pet. denied). In that case, however, the plaintiffs did not contend that their employee grievance was a good faith report of a violation of the law by the supervisor. *See id.* at 754.

otherwise enforce the law alleged to be violated. Instead, Steward seeks action from White as his supervisor and requests a meeting with the sheriff as his ultimate supervisor not as a law enforcement official.

We caution that our holding should not be read to broadly apply to all facts. In other circumstances, a personal grievance, even by an experienced law enforcement officer, may be shown to satisfy the requirement that the report be made in good faith to an appropriate law enforcement authority.

CONCLUSION

The order of the trial court is reversed, and the claims against the County are dismissed.

ALMA L. LÓPEZ, Chief Justice, dissenting.

Although the majority opinion appears to concede that Steward's personal grievance reported a violation of the law, the majority holds that the personal grievance was not made to an appropriate law enforcement authority, distinguishing the Austin court's decision in *Robertson County v. Wymola,* 17 S.W.3d 334 (Tex.App.-Austin 2000, pet. denied). I respectfully dissent.

The Texas Whistleblower Act requires that the report must be made to an appropriate law enforcement authority. TEX. GOV'T CODE ANN. § 554.002(a) (Vernon Supp.2004). Section 554.002(b) of the Act provides that a report is made to an appropriate law enforcement authority if the authority is part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to: (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law. TEX. GOV'T CODE

ANN. § 554.002(b) (Vernon Supp.2004). Under this definition, as noted by the Austin court, we must look to the entity that received the report rather than the specific individual to whom the report was made. *Wymola,* 17 S.W.3d at 340–41. As the Austin court further noted, the sheriff's department is charged with investigating and enforcing the laws of the State. *Id.* at 341. Since Lt. White is an officer within the sheriff's department, it follows that Steward made a report to an appropriate law enforcement authority when he filed his personal grievance with White.

The majority distinguishes *Wymola,* concluding that Steward did not make a good faith report because he knew the proper method for reporting violations of the law and Steward was only seeking relief from White as his supervisor, not as a law enforcement authority. I disagree with this distinction. Typically, internal procedures require employees to follow a chain of command and report perceived problems to their direct supervisors. I am certain that the sheriff's department has such a chain-of command-type policy. Accordingly, in filing the personal grievance with White, Steward acted in good faith by filing the report with an appropriate law enforcement authority while still complying with the internal chain of command. Because the sheriff's department is an appropriate law enforcement authority and Steward acted in good faith in filing the personal grievance with White, I would hold that Steward has stated a cause of action under the Texas Whistleblower Act. Because the majority holds to the contrary, I respectfully dissent.