# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00072-CV

**Hartford Casualty Insurance Company, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
## NO. GV3-01560, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## O P I N I O N

In this case, we construe finance code section 153.402(c)[1] to determine whether the phrase "may collect from the proceeds of a bond" allows the State[2] to collect from a surety an administrative penalty assessed against the surety's principal without first providing the surety with

---

[1]  Section 153.402(c) states that "the penalty may be paid and collected from the proceeds of a bond, letter of credit, or deposit required under section 153.109 or 153.110." Tex. Fin. Code Ann. § 153.402(c) (West 1998).

[2]  Here, the Attorney General represents the Finance Commission (the Finance Commission), the Department of Banking (the Department), and the Banking Commissioner (the Commissioner). The Department operates under the purview of the Finance Commission. Tex. Fin. Code Ann. §11.301 (West 1998). Likewise, the Commissioner serves at the will of the Finance Commission. Tex. Fin. Code Ann. § 12.101(a) (West Supp. 2004-05). For ease of reference, we will refer to these parties collectively as the State.

notice and opportunity for a hearing. Appellant, Hartford Casualty Insurance Company (Hartford), contends that since the statutory grant of authority regarding administrative penalties found in finance code section 153.402(c) is discretionary, its constitutional right to procedural due process entitles it as a surety to notice and opportunity for a hearing before it can be held liable for an administrative penalty assessed against its principal. The State argues that it would have been useless to provide Hartford with notice and a hearing because Hartford was not a target of the administrative penalty. The district court held that the penalty may be collected from Hartford.

In three issues on appeal, Hartford contends that (1) construing finance code section 153.402(c) to allow the State to collect from a surety, without notice or opportunity for a hearing, the administrative penalty assessed against its principal violates the due process clauses of both the United States and Texas Constitutions; (2) the trial court's order violates the Texas Administrative Procedure Act (the APA), Administrative Code, and Finance Code; and that (3) the trial court erred by awarding attorney's fees to the State. Because when possible we interpret a statute in a manner that renders it constitutional, we hold that notice and opportunity for a hearing are implied into finance code section 153.402(c). *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000). Thus, Hartford was denied its right to procedural due process. We reverse and render judgment that the State cannot collect the administrative penalty from Hartford.

**Background**

In 1997, Ernesto and Aida Bolmey requested and obtained a license authorizing their company, Airport Exchange, to operate four currency exchange shops at various locations in Texas.

2

To satisfy the licensing requirements, Airport Exchange had to post a $300,000 bond with the Commissioner.[3] Hartford agreed to furnish the bond and act as surety for Airport Exchange. The surety contract stated that the bond was "for the use and benefit of the Department and of any creditor of the applicant [Airport Exchange] for any liability incurred on any currency exchange or transmission conducted by the applicant as licensee."

In December 2001, Airport Exchange's counsel informed the Department that Airport Exchange had ceased doing business as a currency exchange company. He also admitted that Airport Exchange had failed to transmit funds that it had received from customers. He informed the Commissioner that Hartford, as surety, would have to fulfill the unmet obligations of his client. The day after receiving this information, the Commissioner, claiming a threat of immediate and irreparable harm, issued a cease and desist order against Airport Exchange and the Bolmeys. The Commissioner further ordered the Department to immediately seize all funds held in Airport Exchange's bank accounts. The Department determined that in 186 separate transactions Airport Exchange had accepted $83,433.52 from customers, which it failed to transmit. Ernesto Bolmey admitted that he instructed his business manager to stop transmitting the funds "so that they could use the money to help finance their business operations."

Airport Exchange appealed the Commissioner's cease and desist order to the Texas Finance Commission. The Commissioner filed a separate action with the Finance Commission

---

[3] Finance code section 153.109 provides that a license holder shall post a bond with a qualified surety company or an irrevocable letter of credit issued by a qualified financial institution. Tex. Fin. Code Ann. § 153.109(a) (West Supp. 2004-05). The amount of the bond or letter of credit are to be determined by the Commissioner. *Id*. § 153.109(b) (West Supp. 2004-05).

seeking an administrative penalty against Airport Exchange and the Bolmeys. The Finance Commission referred both matters to an administrative law judge (the ALJ) who consolidated the two matters and scheduled a hearing. Hartford was not notified of the hearing.

The hearing was held on May 23, 2002. No representative of Airport Exchange or the Bolmeys appeared; likewise, Hartford sent no representatives since it did not know about the hearing. The only parties who appeared were the Department and the Commissioner. In his proposal for decision, the ALJ noted that Airport Exchange's failure to appear at the hearing was "some evidence supporting an adverse inference" against it. The ALJ found that Airport Exchange had violated multiple sections of the finance code and recommended that the appeal be denied. He also determined that the Commissioner had "the discretion to impose the requested penalty in the amount of $37,200." There was no finding that Hartford, as surety, had violated any section of the finance code. Indeed, the ALJ noted that Hartford had assisted the Department in reimbursing all of the identified aggrieved parties. Other than that acknowledgment, Hartford is not mentioned in either the proposal for decision or the Commission's final order.

On January 27, 2003, the State sent a demand letter asking Hartford to pay the $37,200 administrative penalty that had been imposed against Airport Exchange. This letter was the first notice that Hartford had received regarding the administrative penalty. Hartford declined to pay the penalty. In May 2003, the State commenced the present action against Airport Exchange, its owners—Ernesto & Aida Bolmey—and Hartford, seeking payment of the penalty. The State argued to the trial court that finance code section 153.402(c) allows it to collect the penalty from the

4

proceeds of the bond. Because neither Airport Exchange nor its owners responded to the State's petition, the trial court entered a default judgment against Airport Exchange and the Bolmeys. At the conclusion of the bench trial, the trial court ruled that the State could collect the penalty from Hartford and further ordered Hartford to pay the State's attorney's fees. This appeal followed.

**Standard of Review**

In this case, we are asked to construe finance code section 153.402(c) to determine whether it allows the State to collect from a surety an administrative penalty assessed against the surety's principal without first providing the surety with notice and opportunity for a hearing. Statutory construction is a matter of law, which we review *de novo*. *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989). When interpreting a statute, our primary task is to ascertain and effectuate the intent of the legislature. *Fleming Foods of Tex. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999); *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex. 1994); *Sharp v. Clearview Cable TV, Inc.*, 960 S.W.2d 424, 426 (Tex. App.—Austin 1998, pet. denied). Disputed provisions are to be considered in context, not in isolation. *Texas Workers' Comp. Comm'n v. Continental Cas. Co.*, 83 S.W.3d 901, 905 (Tex. App.—Austin 2002, no pet.); *see also Fitzgerald v. Advanced Spine Fixation Sys.*, 996 S.W.2d 864, 866 (Tex. 1999). Texas courts are to consider, among other factors, the language of the statute, legislative history, the nature and object to be obtained, and the consequences that would follow from alternative constructions, even when a statute is not ambiguous on its face. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001); *Union Bankers Ins. Co.*, 889 S.W.2d at 280. We further presume that in enacting a statute the legislature intended to comply with the federal and state constitutions. Tex. Gov't Code Ann. § 311.021 (West 1998).

5

**Discussion**

**Due Process**

In its first issue, Hartford contends that assessing an administrative penalty against a surety without affording it notice and an opportunity for a hearing deprives it of a property right without the constitutionally guaranteed due process of law. *Texas Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 658 (Tex. 2004). Individuals must be afforded both substantive and procedural due process. *Id.* Substantive due process protects against the arbitrary and oppressive exercise of government power, regardless of the fairness of the procedures. *Daniels v. Williams*, 474 U.S. 327, 331 (1986). The procedural due process guarantee protects against arbitrary takings. *County of Sacremento v. Lewis*, 523 U.S. 833, 846 (1998).

The due process clause in the state constitution requires the same level of due process as the federal constitution. *University of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 929 (Tex. 1995); *see also Bell v. Texas Workers' Comp. Comm'n*, 102 S.W.3d 299, 304 (Tex. App.—Austin 2003, no pet.) (stating that in matters of procedural due process, Texas courts traditionally follow federal due process interpretations and consider federal decisions on these matters persuasive authority). Questions of procedural due process require an analysis of (1) whether the plaintiff has a constitutionally protected property or liberty interest at stake, and (2) if so, what process is due to sufficiently protect that interest. *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 569-70 (1972). At a minimum, due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976);

*Perry v. Del Rio*, 67 S.W.3d 85, 92 (Tex. 2001); *University of Tex. Med. Sch. at Houston*, 901 S.W.2d at 930.

Finance code section 153.402(c) is silent regarding the procedural due process rights of a surety. However, if possible, we construe a statute in a manner that renders it constitutional. *FM Props. Operating Co.*, 22 S.W.3d at 873. Additionally, as we will discuss, Hartford was entitled to party status under the APA. Thus, we hold that the due process guarantees of notice and opportunity for a hearing are implied into finance code section 153.402(c).

Therefore, because there is no dispute that Hartford has a property interest in the $37,200 penalty assessed, we need only decide whether, under these circumstances, that interest was sufficiently protected. The State argues that Hartford received all of the due process to which it was entitled under Texas law. The State argues that (1) its interpretation of finance code section 153.402 does not violate Hartford's due process rights; (2) Hartford's presence at the administrative hearing would have been meaningless; (3) when a surety agrees to be liable for a particular judgment, notice is not necessary; and (4) Hartford's substantive due process rights were satisfied.

### Finance Code Section 153.402

The liability of a surety is determined by the language of the bond. *Geters v. Eagle Ins. Co.*, 834 S.W.2d 49, 50 (Tex. 1992)*; Howze v. Surety Corp. of Am.*, 584 S.W.2d 263, 266 (Tex. 1979). Additionally, a statute mandating the bond is made part of the bond contract, and is controlling. *Geters*, 834 S.W.2d at 50. Therefore, the State contends that the language of the bond, read in conjunction with finance code sections 153.109 and 153.402, provided Hartford with

adequate notice that it was within the Commissioner's authority to collect the administrative penalty assessed against Airport Exchange from the bond proceeds.

Finance code section 153.109 requires a license holder to post a bond or irrevocable letter of credit in favor of the Department. Tex. Fin. Code Ann. § 153.109 (West Supp. 2004-05). Finance code section 153.402(a) grants the Commissioner authority to order a license holder to pay an administrative penalty if it is found that the licensee violated finance code chapter 153 or any rule or order made pursuant to chapter 153. Tex. Fin. Code Ann. § 153.402(a)(1-3) (West 1998). Finance code section 153.402(c) states that "the penalty may be paid and collected from the proceeds of a bond, letter of credit, or deposit required under section 153.109." Tex. Fin. Code Ann. § 153.402(c) (West 1998).

Hartford agrees that the language of sections 153.402(a) and (c) is implied into its bond with Airport Exchange. However, Hartford argues that the language in section 153.402(c) "may be paid and collected from the proceeds of the bond" grants a discretionary right to collect an administrative penalty from a bond, not a statutory mandate to do so. Hartford claims that the mere possibility that the Commissioner may seek to collect the penalty from the bond proceeds is insufficient to adequately notify a surety that the Commissioner would do so in a particular case.

The word "may" creates a discretionary authority or grants permission or a power. Tex. Gov't Code Ann. § 311.016(1) (West 1998). Here, Hartford was on notice that the Commissioner *could* collect the penalty from the bond, but it had no knowledge that the Commissioner *would* attempt to do so in this case. It was known by all parties that Hartford was the

8

surety for Airport Exchange, yet no one notified Hartford of the administrative hearing. This lack of notice deprived Hartford of the opportunity to address the amount of the bond and to argue that, based on the facts of this case, the penalty should not be collected from Hartford. Therefore, we conclude that section 153.402(c) does not by itself or in conjunction with the bond agreement provide Hartford with adequate notice to protect its interest in the $37,200 sought by the State.

### *Administrative Hearing*

The State contends that Hartford's presence at the administrative hearing would have been meaningless because the hearing concerned Airport Exchange's appeal of the cease and desist order, as well as the Commissioner's imposition of an administrative penalty. Therefore, the State suggests that Hartford's presence at the hearing was useless because the statute imposed the administrative penalty without regard to the surety's wrongdoing. *See Bell*, 102 S.W.3d at 305 (due process does not require a useless hearing when there are no factual issues to dispute).

The State's argument fails to address the discretion afforded to the Commissioner by the statute: Should an administrative penalty be assessed when it is clear that only the surety, not the wrongdoer, will have to pay, and if so, in what amount? Hartford contends that because the Commissioner had the discretion not to collect the penalty from the bond, Hartford was entitled to notice and an opportunity to advocate that position. We agree that the lack of notice deprived Hartford of an opportunity to protect its interest in the $37,200 sought by the State.

We are not swayed by the State's contention that the APA does not require notice in this case. Essentially, the State avers that if a person is not named as a party they cannot ever gain

9

party status.[4] The Finance Commission's rules of procedure for contested case hearings and appeals state, "[P]arty status is limited to persons or entities with a legal right, duty, privilege, power, or economic interest that may be directly affected by the outcome of the proceeding or who are entitled to be parties pursuant to a statute or regulation governing the particular proceeding." 7 Tex. Admin. Code § 9.15(b) (West 2004). The rules further state, "[P]arty status will not be conferred on persons or entities that seek to litigate issues that are not by statute or regulation made part of the administrative proceeding in which party status is sought." *Id*. § 9.15(c)(2). The State insists that the Commissioner's decision to collect the penalty from the bond was not an issue at the hearing. However, because the statutory right to collect from the proceeds of the bond was discretionary, the Commissioner's decision to do so or not was at issue. Thus, Hartford had an economic right that was directly affected by the outcome of the hearing, and the issue it was seeking to litigate was made part of the hearing by statute. Therefore, party status could have been properly conferred on Hartford.

### *Particular Judgment Bonds*

The State relies on *Howze v. Surety Corp. of America*, 584 S.W.2d at 265 to contend that Hartford was not entitled to notice of suits involving Airport Exchange. In *Howze*, the supreme court discussed the general rule in Texas that when a surety agrees to be liable for a particular judgment, then no notice need be given. *Id*. "However, when a surety contracts to be generally liable for all the undertakings of the principal, the surety must be given notice and an opportunity

---

[4] Under the APA a "party" is "a person or state agency named or admitted as a party." Tex. Gov't Code Ann. § 2001.003(4) (West 2000).

to defend the case before it is bound by the judgment." *Id*. The State claims that the bond in this case is a particular judgment bond and consequently, Hartford was not entitled to notice. We are not persuaded that *Howze* controls this dispute.

Applying *Howze* to this case undermines the purpose of the general rule distinguishing particular judgment bonds from general undertaking bonds. The idea that it is unnecessary to provide notice to a surety who furnished a particular judgment bond is based on the notion that any notice would be redundant because the surety agreed to be liable for specifically enumerated acts of the principal. A surety who furnishes this type of bond can and should adjust the premiums based on the principal's potential liability for those specific acts. Here, neither the bond nor the relevant statute imposes liability for all administrative penalties. Section 153.402(c) only states that the administrative penalty *may* be collected from the bond. As we discussed earlier, the Commissioner's right to collect from the bond proceeds is discretionary. As a result, Hartford did not have knowledge at the time it agreed to furnish Airport Exchange's bond that it would automatically be held liable for administrative penalties assessed against Airport Exchange. Therefore, we conclude that *Howze* does not control this case.

We conclude that notice and an opportunity to be heard were required before the Commissioner could collect the administrative penalty from Hartford. Failing that, Hartford's right to procedural due process was violated. *See Perry*, 67 S.W.3d at 92. We reverse the judgment of the trial court.[5]

---

[5] Because we hold that Hartford's right to procedural due process was violated, we do not address Hartford's arguments regarding substantive due process and whether the trial court's order violated the Texas APA, Administrative Code, and Finance Code.

11

**Attorney's Fees**

The State sought and received attorney's fees pursuant to government code section 2107.006. Tex. Gov't Code Ann. § 2107.006 (West 2000) (stating that attorney general may recover reasonable attorney's fees on behalf of state in any proceeding in which the state seeks to collect or recover a delinquent obligation or damages). Having reversed the trial court's judgment, we also reverse its award of attorney's fees.

## Conclusion

Because we hold that Hartford's right to procedural due process was violated, we reverse the judgment of the trial court and render judgment that the State cannot collect the administrative penalty from Hartford.

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Reversed and Rendered

Filed: February 17, 2005