NO. 07-07-0171-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JANUARY 23, 2008

_____

R. SCOTT PHELAN, APPELLANT

V.

TEXAS TECH UNIVERSITY, APPELLEE

_____

FROM THE 200TH DISTRICT COURT OF TRAVIS COUNTY;

NO. D-1-GN-05-002964; HONORABLE MARGARET A. COOPER, JUDGE

_____

**MEMORANDUM OPINION**

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Dr. R. Scott Phelan, appeals from two separate orders granting summary judgment in favor of Appellee, Texas Tech University, and denying summary judgment in his favor. By four points of error, Phelan contends the trial court erred in granting Texas Tech's motion for summary judgment because (1) an adverse personnel action taken after a governmental employee files an assault charge against a supervisor is covered by the

Texas Whistleblower Act,[1] (2) he did report illegal governmental action to a proper law enforcement agency, (3) Texas Tech did deny Phelan his due process rights, and (4) did deprive him of his "liberty interests" in violation of Article 1, § 19 of the Texas Constitution. We affirm.

## Factual and Procedural Background

The facts of this case are extensively set out in our opinion in companion case, *Norville, et al. v. Phelan,* No. 07-07-0035-CV, issued this same date. Except as otherwise relevant to discussion of the issues in this case, those facts need not be repeated.

On August 23, 2005, Phelan filed this suit claiming Texas Tech violated the Texas Whistleblowers Act by unlawfully retaliating against Phelan for making a good faith report of a violation of law by another public employee, Scott Norville. Phelan subsequently amended his petition to assert additional claims for unlawful taking of his property right to continued employment without due process under Article 1, §§ 17 and 19 of the Texas Constitution and wrongful termination. Texas Tech filed its motion for summary judgment. Phelan then supplemented his petition to assert a claim for deprivation of a "liberty interest" under Article 1, §§ 17 and 19 of the Texas Constitution, responded to Texas Tech's motion for summary judgment, and filed a cross-motion for summary judgment. On December 12, 2006, without specifying any grounds, the trial court granted Texas Tech's motion as to

---

[1]Tex. Gov't. Code Ann. §§ 554.001-.009 (Vernon 2004).

Phelan's claims of (1) violation of constitutional due process, (2) common law wrongful termination, and (3) violation of the Texas Whistleblower Act. The trial court's order did not address Phelan's motion for summary judgment or his newly-pled liberty interest claim. Texas Tech then filed a second motion for summary judgment addressing Phelan's liberty interest claim. On February 9, 2007, again without specifying any grounds, the trial court granted Texas Tech's second motion for summary judgment and denied Phelan's motion for summary judgment. Phelan appeals the entry of the December 12, 2006, and February 9, 2007 orders.

## Standards of Review

For a party to prevail on a motion for summary judgment, that party must conclusively establish the absence of any genuine question of material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Browning v. Prostok,* 165 S.W.3d 336, 344 (Tex. 2005). To establish entitlement to judgment as a matter of law, a movant must either prove all essential elements of his claim, *MMP, Ltd. v. Jones*, 710 S.W.2d 59 (Tex. 1986), or negate at least one essential element of the non-movant's cause of action. *Randall's Food Mkts, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). A defendant's motion for summary judgment should be granted if the defendant disproves at least one essential element of the plaintiff's cause of action or establishes all the elements of an affirmative defense as a matter of law. *Shaw v. Moss*, 67 S.W.3d 836, 842 (Tex. 2001). Once the movant has established a right to summary judgment, the non-

3

movant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979); *Barbouti v. Hearst Corp.*, 927 S.W.2d 37, 64 (Tex.App.–Houston [1st Dist.] 1996, writ denied).

We review the trial court's summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In reviewing a summary judgment, this Court must apply well-established standards which are: (1) the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (3) every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex. 1997), *citing Nixon v. Mr. Prop. Mgmt.* Co., 690 S.W.2d 546, 548-49 (Tex. 1985). Review of the denial of a motion for summary judgment is governed by the same standard as governs review of the granting of such a motion. *Delta Airlines, Inc. v. Norris*, 949 S.W.2d 422, 425 (Tex.App.–Waco 1997, writ denied).

When an order granting summary judgment does not specify or state the grounds relied on, the summary judgment will be affirmed on appeal if any of the grounds presented in the motion are meritorious. *Western Investments, Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex. 2005); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989). When both parties move

4

for summary judgment on the same issues and the trial court grants one motion and denies the other, as here, the reviewing court considers the summary judgment evidence presented by both sides, determines all questions presented, and if the reviewing court determines that the trial court erred, renders judgment the trial court should have rendered. *Id. See Bank of America, N.A. v. Amarillo National Bank*, 156 S.W.3d 108, 110 (Tex.App.–Amarillo 2004, no pet.).

The burden is on the moving party to show there is no evidence of one or more of the essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. Tex. R. Civ. P. 166a. *See Duvall v. Texas Department of Human Services*, 82 S.W.3d 474, 477 (Tex.App.–Austin 2002, no pet.). To make such a showing, the defendant must prove there are no genuine issues of material fact concerning one or more elements of the plaintiff's cause of action and that he is entitled to judgment as a matter of law. *Ho v. University of Texas at Arlington,* 984 S.W.2d 672, 681 (Tex.App.–Amarillo 1998, pet. denied), *citing Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970).

Once the party meets this initial burden, the non-movant must submit or identify evidence in the record raising a genuine issue of material fact as to each element of their claim or defense challenged by the defendant's motion. Tex. R. Civ. P. 166a. A fact is "material" if it might affect the outcome of the suit under governing law, and an issue is "genuine" if it is real and substantial, as opposed to merely formal, pretended, or a sham.

5

*Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001). The non-movant may not raise a genuine issue of material fact by submitting conclusory allegations, improbable inferences, or unsupported speculation. *See First Union Nat. Bank v. Richmont Capital Partners I, L.P.,* 168 S.W.3d 917, 930 (Tex.App.–Dallas 2005, no pet.).

## Whistleblower Cause of Action

The Texas Whistleblower Act prohibits a state or local government from taking adverse personnel action against a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority. Tex. Gov't Code Ann. § 554.002(a) (Vernon 2004). The cause of action created by the Act is purely statutory creating a right unknown at common law. *Scott v. Godwin*, 147 S.W.3d 609, 621 (Tex.App.–Corpus Christi 2004, no pet.); *City of San Antonio v. Heim*, 932 S.W.2d 287, 290 (Tex.App.–Austin 1996, writ denied). The statute was enacted to protect public employees who report illegal activity and enhance openness in government while compelling compliance with the law. *Castaneda v. Texas Dep't of Agriculture*, 831 S.W.2d 501, 503 (Tex.App.–Corpus Christi 1992, writ denied). Because the statute is remedial in nature, it is to be liberally construed. *Roberts v. Titus County Memorial Hosp.,* 159 S.W.3d 764, 769 (Tex.App.–Texarkana 2005, pet. denied), *cert. denied*, 564 U.S. 1095, 126 S.Ct. 1070, 163 L.Ed.2d 862 (2006). And, whether a violation of law has been reported to an appropriate law enforcement authority is a

6

question of law to be decided by the court. *City of Fort Worth v. DeOreo*, 114 S.W.3d 664, 668 (Tex.App.–Fort Worth 2003, no pet.).

To establish a claim for retaliation under the Act, the claimant must prove the following elements: (1) he is a public employee; (2) he acted in good faith in making a report; (3) the report involved a violation of law; (4) the report was made to an appropriate law enforcement authority; and (5) he suffered retaliation as a result of making the report. *County of Bexar v. Steward*, 139 S.W.3d 354, 357-58 (Tex.App.–San Antonio 2004, no pet.).

The Act defines a "law" as a state or federal statute, ordinance of a local governmental entity, or rule adopted under a statute or ordinance. Tex. Gov't Code Ann. § 554.001(1) (Vernon 2004).[2]  An "appropriate law enforcement authority" is a governmental entity that the employee in good faith believes is authorized to "regulate under or enforce the law alleged to be violated in the report" or "investigate or prosecute a violation of criminal law."  Tex. Gov't Code Ann. § 554.002(b) (Vernon 2004).

To establish a "good faith" reporting, the complainant must show that his belief was reasonable in light of the employee's training and experience. *Texas Dep't of*

---

[2]Though an employee need not identify a specific law when making a report, and need not establish an actual violation of law, there must be some law prohibiting the complained of conduct to give rise to a Whistleblower claim. *LLanes v. Corpus Christi Independent School District*, 64 S.W.3d 638, 642-43 (Tex.App.–Corpus Christi 2001, pet. denied) ("[o]therwise, every complaint, grievance and misbehavior could support a claim under the Act.").

7

*Transportation v. Needham*, 82 S.W.3d 314, 321 (Tex. 2002). *See Duvall,* 82 S.W.3d at 480-81.

For purposes of this appeal, Texas Tech does not contend that Phelan was not a public employee who suffered an adverse personnel action. Texas Tech's defense rests upon its contention that (1) Phelan did not report a violation of the law as contemplated by the Whistleblower's Act, (2) the reports Phelan did make were not to an appropriate law enforcement agency, and (3) there is no causal connection between Phelan's report and Texas Tech's decision to non-reappoint him.

### Point of Error One

By his first point of error, Phelan contends the trial court erred in granting Texas Tech's motion for summary judgment because an adverse governmental personnel action taken after an employee files an assault charge against a supervisor is covered by the Texas Whistleblower's Act. In response, Texas Tech contends that an assault is not a violation of the law as contemplated by the Act and that there is no causal relationship between Phelan's report and Texas Tech's decision to non-reappoint him.

Phelan contends a triable issue of fact exists regarding whether there is a causal link between his filing the assault charge with the Texas Tech Police and his non-reappointment. In support, Phelan asserts he did not receive notice that he resign or be terminated at the May 9 meeting because Norville alone did not have authority to terminate

him, and he did not seriously believe Norville.  Phelan also asserts Kiesling's deposition testimony affirmatively establishes that the decision to terminate him had not been made prior to the May 14 meeting between Phelan and Kiesling.  Phelan contends the decision to terminate him was reached at the May 20 meeting between Norville, Eibeck, Kiesling, Hall, Marcy, and Mellinger after they received Phelan's assault complaint from the Texas Tech Police.

Although the Act does not explicitly require an employee prove a causal link between the reported violation of law and the subsequent discrimination, the Texas Supreme Court has held that the employee must demonstrate causation by a preponderance of the evidence.  *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 67 (Tex. 2000), *citing Texas Dep't of Human Services v. Hinds*, 904 S.W.2d 629, 633 (Tex. 1995).  Requiring the employee to prove causation is necessary otherwise "the statute would give public employees life tenure for reporting activity believed in good faith to be unlawful."  *Id.* Although the employee need not prove the protected activity was the sole cause of the employer's prohibited conduct, the employee must establish a "but for" causal nexus between the protected activity and the employer's prohibited conduct.  *Vela,* 186 S.W.3d at 54. To show causation, a public employee must demonstrate that *after* he or she reported a violation of law in good faith to an appropriate law enforcement authority, the employee suffered discriminatory conduct by his or her employer that would not have occurred *when it did if the employee had not reported the illegal conduct*.  *City of Fort Worth,* 29 S.W.3d at 67 (emphasis added).

9

Phelan contends that notice of an adverse personnel action is not notice unless the person giving the notice has ultimate authority to implement the adverse personnel action. It is undisputed that, on May 9, 2005, Phelan attended a meeting where Norville, his supervisor, informed him that he had one of two options–either resign or be terminated. Whether Norville had sole authority to terminate Phelan's employment is immaterial. It is sufficient that Phelan received notice from his immediate superior, Norville, that he would be terminated. Moreover, a subjective belief on Phelan's part that Norville could not or would not fire him is not competent summary judgment evidence. *See Peavy v. Dallas Independent School District*, 57 F.Supp.2d 382, 386 n.3 (N.D. Tex. 1999).

Phelan next contends the date he received notice should not be controlling. Rather, he asserts the date he received formal notification of the adverse personnel action should be used to determine whether a causal nexus exists between his filing the criminal complaint and his non-reappointment. Phelan cites no legal authority in support of this proposition. We agree with *Bexar* that the proper focus is on the time the employee learns of the allegedly discriminatory decision, not on the time when the consequences of that decision come to fruition. *County of Bexar*, 139 S.W.3d at 357-58. This ruling comports with prior rulings related to accrual of a cause of action for employment discrimination. *Luna v. Frito-Lay, Inc.,* 726 S.W.2d 624, 628 (Tex.App.–Amarillo 1987, no writ) (court agrees with the federal rule that accrual of an action for termination of employment occurs when the employee is informed that this employment will be terminated, not when it actually is terminated). *See The University of Texas-Pan American v. De Los Santos*, 997

S.W.2d 817, 820 (Tex.App.–Corpus Christi 1999, no pet.) (statute of limitations begins to run when University informed employee of its intent to terminate her employment).

Neither is Kiesling's deposition testimony sufficient to raise a genuine issue of fact as to causation. Kiesling testified as follows:

MR. CARNEY: The other question I have for you is: When you went to Dean Eibeck to ask her if it was okay to go to talk to Scott Phelan after the e-mail about suing everybody came out, did she mention to you anything about we are not going to reappoint Scott?

KIESLING: Oh, no.

MR. CARNEY: Or we're going to fire him or anything like that?

KIESLING: No. No, I don't think any such considerations – Certainly we did not discuss it and I don't believe that was in her thinking or mind or anybody at that point.

Kiesling's testimony merely establishes that he and Eibeck did not discuss Phelan's non-reappointment prior to his meeting with Phelan. As such, Kiesling's testimony at best represents less than a scintilla of evidence in Phelan's favor. Further, Kiesling's testimony regarding what Eibeck and others were, or were not, thinking is inadmissible speculation and will not be considered.[3]

---

[3]The same standards and principles of evidence that are applicable in a trial on the merits are equally applicable in a summary judgment proceeding. *Ho v. University of Texas at Arlington*, 984 S.W.2d 672, 680 (Tex.App.–Amarillo 1998, pet. denied). *See also* 68 Tex. Jur. 3D *Summary Judgment* § 30 (2003).

Phelan points to no other evidence to substantiate his assertion that the decision to non-reappoint him was not made until the May 20 meeting. On the other hand, Provost and Senior Vice President for Academic Affairs Marcy affirmatively states in his affidavit the decision to non-reappoint Phelan was made prior to the May 20 meeting, and the purpose of the meeting was to discuss proper procedures for Phelan's non-reappointment. Ten days after his luncheon meeting with Norville and at least six months after the alleged assault occurred, Phelan filed a complaint with the Texas Tech Police. Thus, because Phelan received notice of the adverse personnel action prior to his filing the assault charge, Phelan fails to establish a Whistleblower claim because causation is lacking as a matter of law. *See County of Bexar*, 139 S.W.3d at 358.

Accordingly, we hold Phelan is not entitled to protection under the Whistleblower Act for the reported assault because he has failed as a matter of law to prove a causal link between the filing of his criminal complaint and his non-reappointment. Our decision pretermits consideration of whether an assault of the person is a "violation of law" as contemplated by the Act. Tex. R. App. P. 47.1. Point of error one is overruled.

## Point of Error Two

By his second point of error, Phelan contends the trial court erred in its determination that Texas Tech was not an "appropriate law enforcement authority" within the context of his report to Texas Tech officials, Eibeck, and Kiesling, that Norville was possibly using Texas Tech property and personnel in his private consulting business.

Texas Tech contends that, as a matter of law, Phelan's supervisors were not an "appropriate law enforcement authority" as contemplated by the Act.

On deposition, Phelan testified he knew Eibeck and Kiesling did not have the authority to prosecute Norville and/or send him to jail. Rather, Phelan testified that he believed they would investigate his allegations, take disciplinary action and, if warranted, refer the matter to the proper authorities. Phelan cites Texas Tech's internal policies in support of a duty on behalf of Eibeck and Kiesling to investigate and report his complaints. In sum, Phelan contends he had a good faith belief he was reporting a violation of law to an appropriate law enforcement authority when he reported the alleged misuse of Texas Tech personnel and property to Eibeck and Kiesling because they were required to investigate and report to higher authorities pursuant to Texas Tech's internal policies and procedures.

Therefore, we must determine if there is more than a scintilla of evidence to support Phelan's contention that a fact question existed as to whether his report constitutes a good faith report of a violation of law to an appropriate law enforcement authority. A violation of Texas Tech's internal policies does not constitute a "violation of law" under the Act. *See Harris County Precinct Four Constable Department v. Grabowski*, 922 S.W.2d 954, 955-56 (Tex. 1996)*; Vela,* 186 S.W.3d at 53; *City of Houston v. Kallina*, 97 S.W.3d 170**,** 174-75 (Tex.App.–Houston [14th Dist.] 2003, pet. denied); *Ruiz v. City of San Antonio*, 966 S.W.2d 128, 130 (Tex.App.–Austin 1998, no pet.).

Moreover, Phelan's statements that he believed Eibeck and Kiesling had no authority to arrest, prosecute, or incarcerate Norville evidences that he did not have a good faith belief Texas Tech was authorized to regulate, enforce, investigate, or prosecute any law alleged to have been violated.[4] Further, Phelan's reliance on Texas Tech's disciplinary process, his participation therein, and his belief that Texas Tech would forward the information to another entity to prosecute does not raise a fact question as to whether Phelan had a good faith belief that he was reporting a violation of law to an appropriate law enforcement authority. *Needham*, 82 S.W.3d at 321. *See also Roberts*, 159 S.W.3d at 771-72; *City of Houston*, 97 S.W.3d at 173-74; *City of Weatherford v. Catron*, 83 S.W.3d 261, 269 (Tex.App.–Fort Worth 2002, no pet.); *Duvall*, 82 S.W.3d at 482. In the record below, Phelan alludes to having reported Norville's alleged misuse of Texas Tech property and personnel to the campus EEOC office and the Texas Society of Professional Engineers. The Court notes that Phelan's report to these entities could not possibly supply the basis for a good faith reporting because they informed him they could not assist him. *See Vela*, 186 S.W.3d at 54. Moreover, his report of an alleged ethical violation to the Engineering Society was not a report of "a violation of law." *See Harris County Precinct*

---

[4]Phelan does not identify any specific statute, ordinance, or rule adopted pursuant to a statute or ordinance that he asserts was violated by Norville related to misuse of Texas Tech property. Nevertheless, Phelan's pleadings may be interpreted to allege a criminal offense, *i.e.* abuse of official capacity. *See* Tex. Penal Code Ann. § 39.02 (Vernon 2003). However, we note that, even if Phelan had pleaded a criminal violation such as abuse of official capacity, the result would be the same. Phelan has provided no evidence that Ebeck, Kiesling, or anyone else at Texas Tech had any authority to regulate under, enforce, investigate, or prosecute violations of the Penal Code.

14

*Four Constable Dep't,* 922 S.W.2d at 955-56.  On deposition, Phelan stated he was *not sure* whether he reported the misuse of Texas Tech property to the Texas Tech Police; he *only* reported the assault to Texas Tech Police because he did not have evidence of misuse; he *did not* tell Texas Tech Police about the alleged excessive consulting; he *may* have reported the alleged misuse to the Lubbock County District Attorney or Lubbock Police; and the *only* illegal activity he reported to the police was the alleged assault.  This testimony, at best, represents less than a scintilla of evidence in support of any assertion that he reported the misuse of Texas Tech property to anyone other than Eibeck and Kiesling, and as such raises no genuine issue of material fact.

Phelan is correct that, in determining whether a violation of law was reported to an appropriate law enforcement authority, we look to the entity that employs the individual who receives the report.  *Robertson County v. Wymola*, 17 S.W.3d 335, 340 (Tex.App.–Austin 2000, pet. denied).  Nevertheless, *Wymola* offers Phelan no support.  In *Wymola*, the court concluded the report was made to an appropriate law enforcement authority because the employee reported the violation of law to her supervisor who also worked for the sheriff's department.  *Id.* at 342.  Here, Phelan has produced no evidence to suggest that Texas Tech had any authority similar to the sheriff's department in *Wymola*.[5]

---

[5]Neither does *Housing Authority of the City of El Paso v. Rangel*, 131 S.W.3d 542 (Tex.App.–El Paso 2004, no pet.), offer Phelan any support.  In *Rangel*, the employee reported the illegal activity to HUD *and* the Office of Inspector General.  The trial court found and the court of appeals agreed that HUD was an appropriate law enforcement agency because the alleged misconduct involved activities which HUD usually and customarily investigated.  *Id.* at 549-50.  Furthermore, the OIG and its agents are

15

Accordingly, we hold, as a matter of law, Phelan's complaint to Eibeck and Kiesling that Norville was misusing Texas Tech personnel and property did not constitute a good faith report of a violation of law to an appropriate law enforcement authority under the Act. Point of error two is overruled.

**Points of Error Three and Four**

By his third and fourth points of error, Phelan contends the trial court erred in granting Texas Tech's motion for summary judgment because Texas Tech denied his due process rights and liberty interest in violation of Article 1 § 19 of the Texas Constitution. Texas Tech contends there are no triable issues of fact related to Phelan's claims and that it is entitled to summary judgment as a matter of law. Specifically, Texas Tech contends there is either no cause of action as a matter of law or there is no causal connection between the alleged acts of Texas Tech and Phelan's claims of damage.

Due Process Claims

Phelan asserts the trial court erred in granting summary judgment in Texas Tech's favor on his due process claims. In support, Phelan contends he could not be non-reappointed except for cause following a hearing because he had acquired tenure and, alternatively, had acquired *de facto* tenure or tenure by default.

---

empowered to conduct criminal investigations, issue subpoenas, carry firearms, make warrantless arrests, obtain and execute warrants for arrest, and searches and seizures of evidence. 5 U.S.C. App. 3 § 6 (2007).

16

The due course clause of the Texas Constitution provides:

No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.

Tex. Const. art. I, § 19.

It is well settled that although the due process clause of the Fourteenth Amendment and the due course of law provision of the Texas Constitution slightly differ in their language, the differences "are without meaningful distinction." *University of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995); *Hartford Casualty Insurance Company v. State*, 159 S.W.3d 212, 216 (Tex.App.–Austin 2005, pet. denied). Although Texas courts are not bound by federal due process jurisprudence, Texas courts traditionally follow federal due process interpretations and consider federal decisions on these matters persuasive authority. *Than*, 901 S.W.2d at 929.

A constitutionally protected property interest is defined as an individual entitlement grounded in state law which cannot be removed except for cause. *County of Dallas v. Wiland*, 124 S.W.3d 390, 396 (Tex.App.–Dallas 2003, no pet.). To have a benefit or property interest protected by procedural due process, one must have a legitimate claim of entitlement rather than an abstract need, desire, or unilateral expectation. *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Govant v. Houston Community College System*, 72 S.W.3d 69, 76

17

(Tex.App.–Houston [14th Dist.] 2002, no pet.).  Property interests are not constitutionally created; rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source, such as state law, rules, or mutually explicit understandings that secure certain benefits and support claims of entitlement to those benefits.  *Tarrant County v. Van Sickle*, 98 S.W.3d 358, 363 (Tex.App.–Fort Worth 2003, pet. denied); *Martine v. Board of Regents, State Senior Colleges of Texas*, 578 S.W.2d 465, 470 (Tex.Civ.App.–Tyler 1979), *appeal after remand*, 607 S.W.2d 638 (Tex.Civ.App.–Austin 1980, writ ref'd n.r.e.).

To have a property interest in public employment, one must prove that he or she has a legitimate claim of entitlement to continued employment.  *Jordan v. Jefferson County,* 153 S.W.3d 670, 674 (Tex.App.–Amarillo 2004, pet. denied).  In analyzing a procedural due process claim, we apply a two-part test to (1) determine whether the plaintiff has a property or liberty interest entitled to procedural due process, and (2) if so, to determine what process is due to sufficiently protect that interest.  *Hartford,* 159 S.W.3d at 216; *County of Dallas,* 124 S.W.3d at 396.

In Texas, continued employment generally depends upon the will of the employer.  *Jordan*, 153 S.W.3d at 674.  Unless there is specific agreement to the contrary that dictates otherwise, an employee can be released for "good reason, bad reason, or no reason."  *Id., citing Montgomery County Hosp. Dist. v. Brown,* 965 S.W.2d 501, 502 (Tex. 1998).  Moreover, if there is no substantive limitation on a university's power to remove a

18

faculty member, the faculty member can be terminated without notice or a hearing because no property interest exists which implicates the protections of the federal or Texas Constitutions. *McCartney, M.D. v. May, M.D.,* 50 S.W.3d 599, 607 (Tex.App.–Amarillo 2001, no pet.). Therefore, whether Phelan lacks formal contractual or tenure security in continued employment at Texas Tech is highly relevant to his procedural due process claim. *See Perry v. Sindermann*, 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972).

The general rule is that a faculty member's employment is subject to their contract and the school's operational policies. *Bowen v. Calallen Independent School District*, 603 S.W.2d 229, 233 (Tex.Civ.App.–Corpus Christi 1980, writ ref'd n.r.e.). The mere showing that a faculty member was not rehired in a particular job, without more, does not amount to a showing of a loss of either property or a liberty interest. *Sindermann*, 408 U.S. at 599, 92 S.Ct. at 2698. Likewise, the mere fact that a faculty member has been repeatedly rehired for consecutive one year terms does not constitute evidence that the school had impliedly contracted with him or her to renew their contract every year. *Hix v. Tuloso-Midway Independent School District*, 489 S.W.2d 706, 710 (Tex.Civ.App.–Corpus Christi 1973, writ ref'd n.r.e.).

Per Texas Tech's Regents' Rules, Faculty Handbook and Operating Procedures, Phelan had not received tenure prior to his non-reappointment in May 2005. The Board of Regents had not admitted him to tenure, and he had served only four years of the

maximum probationary period of six years.  Moreover, Phelan had served in a special full-time appointment as a Research Assistant Professor for only three years, 1998-2001, and needed three more years before he attained an employment status requiring dismissal only for cause.

Alternatively, Phelan contends he attained *de facto* tenure and/or tenure by default because he had been employed by Texas Tech for seven years under circumstances that gave him an expectation that he would receive tenure in 2005.  However, where a university has published written procedures governing tenure such as Texas Tech's Regents' Rules, Faculty Handbook and Operating Procedures, the legitimacy of a claim to tenure acquired *outside* the procedures is vitiated because there is no basis for mutuality.  Unless otherwise provided for in university rules, there is no "common law" tenure, *de facto* tenure, or tenure by default.  *LaVerne v. University of Texas System*, 611 F.Supp. 66, 69 (S.D. Tex. 1985).  Because *de facto* tenure and tenure by default would be acquired outside Texas Tech's procedures, they fail as a matter of law.[6]

---

[6]Dr. McDonald's representation that he *essentially considered* Phelan to be on a tenure track placed no limitation on Phelan's at-will employment.  *See Claus v. Gyorkey*, 674 F.2d 427, 434-35 (5th Cir. 1982).  That Dr. McDonald gave Phelan a copy of Texas Tech's tenure policies and procedures and invited him to a meeting with three recent hires as Assistant Professors is also of no consequence.  Texas Tech's tenure policies also established Phelan's status as a non-tenure track employee.  Finally, that Phelan was assigned teaching duties early after receiving his special full-time appointment as a Research Assistant Professor is not indicative that he was being treated as a tenure track employee.  His appointment letter indicated that his position as a Research Assistant Professor might entail teaching, and Phelan's deposition testimony indicates that it is not unusual for non-tenure track employees to teach classes.

20

Phelan was an at-will employee employed pursuant to annual contracts that expired by their own terms. *See Turner v. Joshua Independent School District*, 583 S.W.2d 939, 942 (Tex.Civ.App.–Waco 1979, no writ). Under Texas Tech's rules, he was entitled to a notice of non-reappointment by issuance of a terminal contract for one academic year. He received the required notice on non-reappointment and, at his request, review by a faculty committee. Phelan claims that Texas Tech did not follow its procedures related to his appeal of non-reappointment to the Tenure Advisory Committee. He asserts that it was improper for members of the Committee, or for non-members of the Committee, to serve on the faculty Committee assembled to hear his appeal of non-reappointment and for Eibeck's draft response to his grievance to be distributed at a Committee meeting. We disagree. The Regents' Rules expressly permit members of the Tenure Advisory Committee, or their appointees, to serve on the faculty committee. And, although Texas Tech's grievance procedure indicates that the procedure does not apply to grievances related to non-reappointment and termination, there is no reciprocal provision regarding appeals of non-reappointment. In fact, the Committee sets its own rules and can accept, or reject, any oral or written statements. In short, there is no prohibition, as Phelan contends, against the Committee considering *any* evidence including Eibeck's draft response to Phelan's grievance. We also note that Phelan cites to no authority, legal or otherwise, in support of his contention that he was entitled to notice of the time and place of the meeting where the Committee considered his appeal, a transcription of the meeting, or a list of what was considered by the Committee in reaching its decision to affirm his non-

reappointment. Neither has he cited any authority authorizing a non-reappointee to appeal the composition of the Committee appointed to consider his appeal. The Committee considered his submission with other evidence and upheld his non-reappointment.

Phelan also contends that because Texas Tech established *some* procedure for review of his non-reappointment, it intended to elevate his status to something more than an at-will employee. Simply because Texas Tech provided some procedure for faculty that are non-reappointed does not mean that it intended to expand by implication the employment rights of a faculty member who is non-reappointed beyond those set forth in its Regents' Rules. *See Wells v. Hico Independent School District*, 736 F.2d 243, 254-55 (5th Cir. 1984), *cert. dism'd*, 473 U.S. 901, 106 S.Ct. 11, 87 L.Ed.2d 672 (1985). These procedures relate to only non-reappointment, not contract renewal or tenure. *Id*. Moreover, Texas does not recognize implied teaching contracts. *See Burris v. Willis Independent School District, Inc.,* 713 F.2d 1087, 1090-91 (5th Cir. 1983).

Phelan's non-reappointment was not tantamount to dismissal or discharge because his contract for the specified time of a year automatically expired at the end of its term. *See Bowen*, 603 S.W.2d at 235. If Phelan had any expectation that he would be renewed for an additional year, or years, his expectation was unilateral. *See Govant,* 72 S.W.3d at 76; *Hix,* 489 S.W.2d at 711. Moreover, no cognizable claim exists because Texas Tech paid Phelan his full salary under his existing contract. *Kinsey v. Salado Independent School District*, 950 F.2d 988, 997 (5th Cir. 1992), *cert. dism'd*, 504 U.S. 941, 112 S.Ct.

22

2275, 119 L.Ed.2d 201 (1992). Thus, Phelan's due process claims fail as a matter of law and his third point of error is overruled.

Liberty Interest Claim

Phelan asserts the trial court erred in granting summary judgment in Texas Tech's favor on his claim for deprivation of a liberty interest. In support, Phelan contends his good name, reputation, honor, or integrity is at stake (1) because of a Texas Tech interdepartmental e-mail sent in May 2005 from Eibeck to Norville containing indirect references to him that may have referred to him as a "creep" and may have described him as exhibiting "dysfunctional behavior"; (2) a second Texas Tech interdepartmental e-mail sent in August 2005 to approximately eight Texas Tech employees indicating Phelan had exhibited "hostile behavior"; and (3) Norville's communication to Phelan in a public restaurant that he would be terminated if he did not resign.

The law is clear in the employment context that a liberty interest is affected only when a plaintiff is terminated for reasons which were false, stigmatizing, and published, such that his standing in the community is seriously damaged or stigmatized to the extent he cannot seek or obtain other employment. *Roth*, 408 U.S. at 573-75, 92 S.Ct. at 2707; *Jones v. Houston Independent School District*, 805 F.Supp. 476, 478 (S.D. Tex. 1992), *aff'd,* 979 F.2d 1004 (5th Cir. 1992). For a charge to be stigmatizing, it must be worse than merely adverse; it must be such as would give rise to a badge of infamy, public scorn, or the like. *Wells v. Hico Independent School District*, 736 F.2d 243, 256 n.16 (5th Cir. 1984),

23

*cert. dism'd,* 473 U.S. 901, 106 S.Ct. 11, 87 L.Ed.2d 672 (1985). The public employer must make concrete, false assertions of wrongdoing on the part of the employee; *Blackburn v. City of Marshall*, 42 F.3d 925, 936 (5th Cir. 1995) and, the infringement of employee's liberty interest can be found only where the governmental agency has made or is likely to make the allegedly stigmatizing charges public in any official or intentional manner, other than in connection with the defense of legal action. *Kelleher v. Flawn*, 761 F.2d 1079, 1087-88 (5th Cir. 1985).

To establish a claim for the deprivation of a liberty interest, a plaintiff must prove the following: (1) that the plaintiff was discharged; (2) stigmatizing or defamatory charges were made against the plaintiff in connection with the discharge; (3) that the charges were false; (4) that no meaningful public hearing was conducted pre-discharge; (5) that the charges were made public; (6) that plaintiff requested a hearing in which to clear his name; and (6) plaintiff's request was denied. *Rosenstein v. City of Dallas*, 876 F.2d 392, 395-96 (5th Cir. 1990).

Phelan contends Texas Tech's statements are damaging to his reputation in the academic community. If not refuted, Phelan claims any possibility of his obtaining future employment in a major university will be foreclosed and future advancement in his present position may also be hindered. Neither harm to reputation nor the consequent impairment of future employment opportunities are constitutionally cognizable injuries. *D. Vander Zee v. Reno*, 73 F.3d 1365, 1369 (5th Cir. 1996), *citing Siegert v. Gilley*, 500 U.S. 226, 233-35,

111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991). Neither is the loss of Phelan's freedom of choice in the job market a cognizable constitutional injury. *D. Vander Zee,* 73 F.3d at 1369-70.

Phelan fails to produce any competent summary judgment evidence that these statements have seriously damaged his standing and associations in the community or impaired his ability to obtain other employment.[7] In fact, within weeks of attending a conference in Boston following his non-reappointment, Phelan accepted a position with a prestigious engineering firm making substantially more money while working fewer hours. We do agree that Phelan's non-reappointment might make him less attractive to other employers, but it would "stretch the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." *Roth*, 408 U.S. at 576, 92 S.Ct. at 2708. *See also Perry v. Sindermann*, 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (U.S. 1972).

Phelan's constitutional claim also fails as a matter of law because the statements contained in the e-mails were not stigmatizing. At the very least, a statement is not stigmatizing if it is not defamatory. *Rosenstein*, 896 F.2d at 395-96. To be actionable, the

---

[7]In his Reply Brief, Phelan points to a single instance where he applied for, but did not receive a university faculty position while at Texas Tech. However, he offers no more than speculation in support of the notion his non-reappointment somehow affected the other university's decision not to offer him a position. *See Bradford v. Tarrant County Junior College District*, 492 F.2d 133, 135 n.3 (5th Cir. 1974); *Cogdill v. Comal Independent School District*, 630 F.Supp. 47, 49-50 (W.D.Tex. 1985).

25

stigmatizing statements must be statements of fact, not opinion, and accuse the employee of wrongdoing; *Blackburn*, 42 F.3d at 936, *i.e.,* expose the employee to public hatred, contempt, ridicule, or financial injury. *Alaniz v. Hoyt*, 105 S.W.3d 330, 345 (Tex.App.–Corpus Christi 2005, no pet.). However, statements may be false, abusive, unpleasant, or objectionable to the employee and still not be defamatory in light of the surrounding circumstances. *MKC Energy Investments, Inc. v. Sheldon*, 182 S.W.3d 372, 377 (Tex.App.–Beaumont 2005, no pet.).

The question of whether an alleged defamatory statement is reasonably capable of a defamatory meaning is a question of law. *Musser v. Smith Protective Services, Inc.,* 723 S.W.2d 653, 654 (Tex. 1987). We construe the alleged defamatory statement as a whole, in light of the surrounding circumstances, based upon how a person of ordinary intelligence would perceive the statement. *Turner v. KTRK Television, Inc.,* 38 S.W.3d 103, 114 (Tex. 2000). Bearing in mind that an expression of opinion is protected free speech, we must also determine whether the statements in question are merely expressions of opinion or actionable assertions of fact. *Simmons v. Ware*, 920 S.W.2d 438, 446 (Tex.App.–Amarillo 1996, no writ). If the complained-of statements are not reasonably capable of defamatory meaning or are protected opinion, summary judgment was proper. *See Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 854 (Tex.App.–Dallas 2003, no pet.).

Reading Eibeck's May 19 e-mail as a whole in light of the surrounding circumstances, we do not find that her indirect reference to Phelan as a "creep" or her

26

description of his behavior as "dysfunctional" to be defamatory. In the e-mail, Eibeck is critiquing a draft document being written by Norville. Her statements are: (1) "Too much of the document *sounds like* 'I couldn't get along with the creep so I am firing him" and (2) "Make it clear that 1. He is minimally performing on the job with examples and then 2. His actions *reflect* dysfunctional behavior with examples." Both statements are indirect references to the behavior described and to Phelan.

Moreover, the descriptive terms on which Phelan bases his claim are opinions, not fact.[8] *See Musser*, 723 S.W.2d at 655; Shaw *v. Palmer*, 197 S.W.3d 854, 857-58 (Tex.App.–Dallas 2006, pet. denied); *Roberts v. Davis*, 160 S.W.3d 256, 262 (Tex.App.–Texarkana 2005, pet. denied); *Columbia Valley Reg. Med. Ctr. v. Bannert*, 112 S.W.3d 193, 199 (Tex.App.–Corpus Christi 2003, no pet.). Because these statements do not imply an assertion of fact, but rather were used in the popular sense as opposed to a clinical sense, we conclude that the statements were expressions of opinion, not statements of fact. *See Shaw*, 197 S.W.3d at 858. We also note Phelan produced no evidence these statements were stigmatizing other than the statements themselves

---

[8]In the August 2005 e-mail from Eibeck to other Texas Tech employees, Eibeck announced Phelan's resignation and requested that his personal e-mail account at Texas Tech be disabled at the end of his last day. She stated: "[h]e has threatened lawsuits and has sent accusatory emails to all faculty and staff in the department. It is certainly possible that he would use his e-raider account to continue this hostile behavior as well as cause harm to the institution." We also note there can be no causal connection between this e-mail and Phelan's non-reappointment because Phelan was non-reappointed in May 2005.

coupled with his legal conclusion—the statements were stigmatizing. Accordingly, we find these interdepartmental e-mail statements were not stigmatizing as a matter of law.

Neither has Phelan produced competent summary judgment evidence to indicate that Texas Tech has disclosed or is likely to disclose any document or communication related to his non-reappointment to the public in any official or intentional manner. There is no evidence the interdepartmental e-mails were forwarded or released outside Texas Tech. There is also no evidence that the e-mail from the Texas Tech employee to a third party was forwarded or released to anyone beyond the recipient, or that the communication was an official or intentional disclosure by Texas Tech. Under these circumstances, there was no publication. *See Hughes v. City of Garland*, 204 F.3d 223, 227-28 (5th Cir. 2000).

Finally, even if Norville broadcasted in the restaurant the fact that Phelan resign or be terminated, the statement was true, or at the very least, substantially true. *Simmons*, 920 S.W.2d at 447. In addition, because the fact of nonrenewal or termination of a non-tenured public employee by itself is not actionable as a deprivation of a liberty interest, it follows that a disclosure by the public employer that the employee has been nonrenewed or terminated by itself is not actionable either. Accordingly, Phelan's claim of deprivation of a liberty interest fails as a matter of law and his fourth point of error is overruled.

## Conclusion

Having overruled Phelan's points of error, the trial court's judgment is affirmed.


Patrick A. Pirtle
Justice